In re COLOR CRAFT PRESS, LTD., a Utah limited partnership, Debtor.

COLOR CRAFT PRESS, LTD., a Utah limited partnership, Plaintiff,

v.

NATIONWIDE SHOPPER SYSTEMS, INC., Defendant.

Bankruptcy No. 81M–03184.

Civ. Proceeding No. 82PM–0974.

United States Bankruptcy Court, D. Utah.

Feb. 7, 1983.

William G. Fowler, R. Kimball Mosier, Michael N. Zundel, of Roe & Fowler, Salt Lake City, Utah, for plaintiff.

Robert A. Bentley, Salt Lake City, Utah, for defendant.

## MEMORANDUM OPINION

RALPH R. MABEY, Bankruptcy Judge.

### I. INTRODUCTION AND BACKGROUND

On November 6, 1978, Congress enacted Pub.L. No. 95–598, U.S.Code Cong. & Admin.News 1978, p. 5787, the first major revision of bankruptcy law in the United States since 1938. The law contains sweeping jurisdictional reforms. *See,* Pub.L. No. 95–598, Section 241(a), 92 Stat. 2668 (1978), codified at 28 U.S.C. Sections 1471–1482.[1] Section 1471, the linchpin of these reforms, confers jurisdiction on a newly created "bankruptcy court," using a two step process. First, Sections 1471(a) and 1471(b) grant original and exclusive jurisdiction of all "cases" under title 11 and original but not exclusive jurisdiction of all "proceed-

1. For an overview of these jurisdictional reforms, *see, e.g.,* 1 Collier on Bankruptcy ¶ 3.01 *et seq.* (15th ed. 1982); Babitt, "The Bankruptcy Court, Its Judges, Their Jurisdiction and Powers, and Appeals, Under Title 11 of the 1978 Bankruptcy Reform Act: Transition and Beyond," 1979 Ann.Surv.Bank.L. 89; Bondurant, "The Bankruptcy Court As a Constitutional Court," 45 Am.Bank.L.J. 235 (1971); Broude, "Jurisdiction and Venue Under the Bankruptcy Act of 1973," 48 Am.Bank.L.J. 231 (1974); Broude, "The Referee in Bankruptcy As An Article I Judge: A Reply to Mr. Bondurant," 46 Am.Bank.L.J. 39 (1972); Cyr, "Structuring A New Bankruptcy Court: A Comparative Analysis," 52 Am.Bank.L.J. 141 (1978); Drake, "The Judges' Bill and the Commission's Bill: A Question of Access to the Judicial Process," 26 Mercer L.Rev. 1009 (1975); Eisen and Smrtnik, "The Bankruptcy Reform Act of 1978—An Elevated Judiciary," 28 DePaul L.Rev. 1007 (1979); Finley, "Article III Limits on Article I Courts: The Constitutionality of the Bankruptcy Court," 1982 Ann.Surv.Bank.L. 1; George, "The Bankruptcy Appellate Panels: An Unfinished Experiment," 1982 B.Y.U.L.Rev. 205; Kennedy, "The Bankruptcy Court Under The New Bankruptcy Law: Its Structure And Jurisdiction," 55 Am.Bank.L.J. 63 (1981); Kennedy, "The Bankruptcy Court Under The New Bankruptcy Law: Its Structure, Jurisdiction, Venue, And Procedure," 11 St.Mary's L.J. 251 (1979); King, "Bankruptcy Code—Specialized Court Supported," 52 Am.Bank.L.J. 193 (1978); Klee, "Legislative History of the New Bankruptcy Code," 54 Am.Bank.L.J. 275 (1980); Krattenmaker, "Article III and Judicial Independence: Why The New Bankruptcy Courts Are Unconstitutional," 70 Geo.L.J. 297 (1981); Lieb, "Jurisdiction and Venue in Bankruptcy Litigation," 1982 Ann.Surv.Bank.L. 69; Levin, "Bankruptcy Appeals," 58 No.Car.L.Rev. 967 (1980); Levine, "An Enhanced Conception of the Bankruptcy Judge: From Case Administrator to Unbiased Adjudicator," 84 W.Va.L.Rev. 637 (1982); Levit and Mason, "Where Do We Go From Here? Bankruptcy Administration Post-*Marathon*," 87 Com.L.J. 353 (1982); Plumb, "The Tax Recommendations of the Commission on the Bankruptcy Laws—Tax Procedures," 88 Harv.L.Rev. 1360 (1975); Reed, Sagar, and Granoff, "Subject Matter Jurisdiction, Abstention and Removal Under The New Federal Bankruptcy Law," 56 Am.Bank.L.J. 121 (1982); Rifkind, "Bankruptcy Code—Specialized Court Opposed," 52 Am.Bank.L.J. 187 (1978); Note, "Determining Proper Venue of Civil Proceedings Related to a Bankruptcy Case," 1982 Ann. Surv.Bank.L. 393; Note, "Tenure and Salary Clause Restrictions on the Jurisdiction of Article I Courts," 96 Harv.L.Rev. 257 (1982); Note, "Bankruptcy and the Limits of Federal Jurisdiction," 95 Harv.L.Rev. 703 (1982); Note, "Selective Exercise of Jurisdiction in Bankruptcy-Related Civil Proceedings," 59 Tex.L.Rev. 325 (1981).

ings" arising under title 11 or arising in or related to "cases" under title 11 to the district court. Second, Section 1471(c) mandates that all jurisdiction granted to the district court shall be exercised by the bankruptcy court. Section 1471(e), which does not use this two step process, grants exclusive jurisdiction over property of the debtor to the bankruptcy court. Section 1478(a), which likewise does not use a two step process, provides for removal of "any claim or cause of action in a civil action" from district or state courts to the bankruptcy court. Under Section 1478(b), "such claim or cause of action" is subject to remand "on any equitable ground" by the bankruptcy court. A decision under Section 1478(b) is nonreviewable "by appeal or otherwise." Most other orders of the bankruptcy court, however, are appealable, as of right or by permission, to the district court. *See,* Pub.L. No. 95–598, Section 238(a), 92 Stat. 2667 (1978), codified at 28 U.S.C. Section 1334. These reforms, in large measure, were designed to sever the umbilical relation which had existed between the district court and bankruptcy matters. The district court now exercises appellate not supervisory jurisdiction over the bankruptcy court. The truncated decisionmaking of former law is replaced with comprehensive power over bankruptcy problems in a single forum.

These reforms, however, were implemented during a period of transition, from the effective date of the legislation, October 1, 1979, until March 31, 1984. *See,* Pub.L. No. 95–598, Sections 401–411, 92 Stat. 2681–2688 (1978) (uncodified). "Courts of bankruptcy" as defined "under Section 1(10) of the Bankruptcy Act, created under Section 2a of the Bankruptcy Act, and existing on September 30, 1979," are continued, but as a "separate department" of the district court, and given jurisdiction under Section 241(a). *See,* Pub.L. No. 95–598, Sections 404(a) and 405(b), 92 Stat. 2683, 2685 (1978). Consistent with Section 1471(c), cases and proceedings, in almost all regards, are referred from the district judge to the bankruptcy judge within the court of bankruptcy. *See,* Pub.L. No. 95–598, Section 405(a)(1), 92 Stat. 2685 (1978). And the system for appeals to the district court, under Section 1334, is made effective in Pub.L. No. 95–598, Sections 405(c)(1)(C) and 405(c)(2), 92 Stat. 2685 (1978). The courts of bankruptcy thus are assimilated into the new order.

On June 28, 1982, the Supreme Court ruled that Section 241(a), insofar as it authorizes non-Article III bankruptcy judges to hear certain proceedings, is unconstitutional. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (hereinafter *Marathon* ). A majority of the Court did not agree on what were unconstitutional proceedings under Section 241(a). Both plurality and concurring opinions agreed, however, that since Section 241(a) was nonseverable, it must be wholly invalidated. The Court stayed its judgment, first until October 4, and then until December 24, allowing time for curative legislation.

By December 24, Congress had not acted, and the stay of judgment expired. On December 27, in lieu of legislation, the district court entered a rule to fill the jurisdictional gap. The rule assumes that the district court has jurisdiction over cases and proceedings in bankruptcy, and in essence refers them to the bankruptcy judges who act for the district court as special masters. The district court, on its own initiative, or on motion by a party, may withdraw a reference in whole or in part from the bankruptcy judges. The bankruptcy judges, with certain exceptions, are empowered to perform "all acts and duties necessary for the handling of those cases and proceedings." The rule divides "related" from "unrelated" proceedings. Related proceedings "are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or state court," and include, without limitation, "claims brought by the estate against parties who have not filed claims against the estate." Related proceedings do not include matters growing out of the administration of an estate. Nor is a proceeding "related" "merely because the outcome will be affected by state law." If the proceeding is "related," the "bank-

ruptcy judge may not enter a judgment or dispositive order, but shall submit findings, conclusions, and a proposed judgment or order to the district judge, unless the parties to the proceeding consent to entry of the judgment or order by the bankruptcy judge." The bankruptcy judge, however, may enter orders in "unrelated" proceedings. A district judge must review proposed orders in "related" proceedings, even absent appeal by a party. A district judge must also review orders in "unrelated" proceedings when certified by a bankruptcy judge. The scope of review, in any case, is unlimited: it may be *de novo,* and the district judge "need give no deference to the findings of the bankruptcy judge."

## II. PROCEDURAL POSTURE

Plaintiff is a debtor in possession under Chapter 11 of the Bankruptcy Code. On August 20, 1982, it commenced this proceeding against defendant. The complaint alleges that plaintiff performed services under a contract with defendant, that defendant breached this contract, and that damages equal $14,986 plus attorneys fees and interest. On November 2, defendant answered the complaint and counterclaimed for negligence and breach of contract, seeking damages of $28,600. Defendant also challenged the jurisdiction of the bankruptcy court in light of *Marathon.* On December 16, the jurisdiction of the bankruptcy court was questioned again in a proposed pretrial order.

On December 24, as noted above, the stay of judgment expired, and on December 27, the district court entered the rule. These events shifted the focus of inquiry from the bankruptcy court to the district court. The

parties agree, and the rule in its preamble confirms, that the bankruptcy court no longer has jurisdiction to try this case. The parties disagree, however, on whether the district court has this authority, and if so, whether it may be deflected to the bankruptcy judges through the rule. Because of this disagreement, and in the face of an impending trial date, the parties filed briefs on January 4, 1983, and argument was heard January 5.

Plaintiff argues that the rule is valid because the district court has jurisdiction over bankruptcy cases and proceedings under Sections 1471(a) and 1471(b), either as amendments to title 28, or as implemented during transition under Sections 404 and 405.

This bankruptcy judge must address the validity of the rule because it refers the entire proceeding, including issues of jurisdiction, to him. The district court, under the rule, may withdraw any reference, with issues of jurisdiction, from a bankruptcy judge, but has not done so in this case. Nor has any party sought in the district court a withdrawal of reference from the bankruptcy judge in this case. Instead, they have made arguments on jurisdiction here. Thus, a decision is unavoidable.

■ The rule is invalid insofar as it relies upon jurisdiction under Sections 1471(a), 1471(b), and the transition statutes. No other jurisdictional basis validates the rule in this proceeding.[2] Thus, the complaint must be dismissed.

## III. SECTIONS 1471(a) AND 1471(b)

Plaintiff argues that *Marathon* eliminated the jurisdiction of bankruptcy courts un-

**2.** Plaintiff has not asked whether the prospective character of *Marathon* or whether federal question jurisdiction under 28 U.S.C. Section 1331 salvages this proceeding, but these questions have been answered elsewhere in the negative. *See, e.g., In re Richardson,* 27 B.R. 407 (Bkrtcy.D.Utah 1983). Nor has it argued that the counterclaim of defendant confers jurisdiction by consent, an argument which, in any event, would be unavailing. *See, e.g.,* Sen.Rep. No. 95–989, 95th Cong., 2d Sess. 153 (1978) ("The idea of possession and con-

sent as bases for jurisdiction is eliminated"); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 445, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6400 (1977) (same); *In re Motion to Dismiss: Constitutionality of Jurisdiction of the Bankruptcy Court,* 23 B.R. 335, 344 (Bkrtcy.N.D.Ga.1982). *But see, In re The National Sugar Refining Company,* 22 B.R. 279, 280 (Bkrtcy.S.D.N.Y.1982). *But cf. In re Cox Cotton Company,* 7 B.R. 974, 3 C.B.C.2d 615, 625 (Dist.Ct.E.D.Ark.1980); *In re Hotel Associates, Inc.,* 22 B.R. 964, 965 (Bkrtcy.E.D.Pa.1982).

der Section 1471(c) but did not disturb the jurisdiction of district courts under Sections 1471(a) and 1471(b). This residuum of power, it is said, may be delegated by the district court to others, bankruptcy judges in this case who act as special masters. This argument is unconvincing, however, for at least two reasons. First, *Marathon* held that Section 241(a) was nonseverable and struck the entire statute, leaving no remnant of power in either bankruptcy or district courts. Second, assuming that Section 241(a) is severable, the mandatory reference of cases and proceedings to bankruptcy courts under Section 1471(c) prevents the exercise of power by district courts under Sections 1471(a) and 1471(b).

## A. Nonseverability

■ *Marathon* expunged Section 241(a) which embraces all not merely part of Section 1471. The plurality opinion did not parse the statute making distinctions between district and bankruptcy courts. Indeed, it refused to route proceedings to the district court because the statute is nonseverable and "it is for Congress to determine the proper manner of restructuring the Bankruptcy Act of 1978 to conform to the requirements of Article III, in the way that will best effectuate the legislative purpose." *Marathon, supra,* 102 S.Ct. at 2879–2880 and n. 40. The concurring justices agreed, citing footnote 40. *Id.* at 2882 (Justice Rehnquist, concurring opinion).[3] Justice White, in dissent, chides the majority for its "sweeping invalidation" of Section 241(a), *Marathon, supra* at 2884 n. 3 (Justice White, dissenting opinion), acknowledging the holding on nonseverability.[4] The Chief Justice also may have recognized the implications of nonseverability since he invites Congress, not the judiciary, to repair the

Plaintiff has argued that the district court has jurisdiction under old 28 U.S.C. Section 1334. It is unnecessary to decide whether old Section 1334 validates the rule because old Section 1334 conferred no more than "summary" jurisdiction on the district court. *See, e.g.,* 1 Moore's Federal Practice ¶ 0.61[3] (2d ed. 1982), 13 C. Wright, A. Miller, and E. Cooper, Federal Practice and Procedure § 3570 (1975). Since this proceeding is "plenary" rather than "summary," *id.,* it would not be sustainable in any event. Moreover, the survival of old Section 1334, in the wake of the Reform Act, has been questioned. *See, e.g.,* H.R.Rep. No. 97–807, 97th Cong., 2d Sess. 88–107 (1982).

3. The majority did not delineate acceptable from unacceptable claims or legitimate from illegitimate forums because it feared "the delay and expense of jurisdictional disputes," *Marathon supra* at 2880 n. 40, a fear which was prescient in light of recent events.

4. Justice White, joined by Chief Justice Burger and Justice Powell, criticized the notion that non-Article III judges may consider questions of federal but not state law, observing that "clearly this ground alone cannot support the court's invalidation of § 241(a) on its face. The plurality concedes that in adjudications and discharges in bankruptcy, 'the manner in which the rights of debtors and creditors are adjusted,' *ante,* at 2878, n. 36, are matters of federal law. Under the plurality's own interpretation of the cases, therefore, these matters could be heard and decided by Article I judges. But because the bankruptcy judge is also given authority to hear a case like that of petitioner against Marathon, which the Court says is founded on state law, the Court holds that the section must be stricken down on its face. This is a grossly unwarranted emasculation of the scheme Congress has adopted. Even if the Court is correct that such a state law claim cannot be heard by a bankruptcy judge, there is no basis for doing more than declaring the section unconstitutional as applied to the claim against Marathon, leaving the section otherwise intact. In that event, cases such as this one would have to be heard by Article III judges or by state courts—unless the defendant consents to suit before the bankruptcy judge—just as they were before the 1978 Act was adopted. But this would remove from the jurisdiction of the bankruptcy judge only a tiny fraction of the cases he is now empowered to adjudicate and would not otherwise limit his jurisdiction." *Id.* at 2883–2884.

As an afternote to this observation, he remarks: "The plurality attempts to justify its sweeping invalidation of § 241(a), because of its inclusion of state-law claims, by suggesting that this statutory provision is nonseverable. *Ante,* at n. 40. The concurring Justices specifically adopt this argument as the reason for their decision to join the judgment of the Court. The basis for the conclusion of nonseverability, however, is nothing more than a presumption: 'Congress has vested jurisdiction over this and all matters related to cases under title 11 in a single non-Art. III court, and has done so pursuant to a single statutory grant of jurisdiction. In these circumstances, we cannot conclude that if Congress were aware that the grant of jurisdiction could not constitutionally encom-

damage wrought by the judgment of the court. *Marathon, supra* 102 S.Ct. at 2882 (Chief Justice Burger, dissenting opinion.) [5]

Moreover, nonseverance makes sense. If Section 1471(c) and the bankruptcy court are excised from Section 241(a), the statute becomes dysfunctional. The district court, for example, might have partial jurisdic-

tion, *viz.,* over cases and proceedings under Sections 1471(a) and 1471(b), but the balance of jurisdiction, over property, reserved to the bankruptcy court under Section 1471(e), is left in limbo.[6] Sections 1478(a) and 1478(b) would be unserviceable, since they contemplate removal from district and state courts to a bankruptcy court,[7] and

pass this and similar claims, it would simply remove the jurisdiction of the bankruptcy court over these matters.' *Ibid.* Although it is possible, as a historical matter, to find cases of this court supporting this presumption, *see, e.g., Williams v. Standard Oil Co.,* 278 U.S. 235, 242, 49 S.Ct. 115, 117, 73 L.Ed. 287 (1929), I had not thought this to be the contemporary approach to the problem of severability, particularly when dealing with federal statutes. I would follow the approach taken by the Court in *Buckley v. Valeo,* 424 U.S. 1, 108, 96 S.Ct. 612, 677, 46 L.Ed.2d 659 (1976): 'Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law.' Quoting *Champlin Refining Co. v. Corporation Commission,* 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062 (1932). This presumption seems particularly strong when Congress has already 'enacted those provisions which are within its power, independently of that which is not'—*i.e.,* in the older Bankruptcy Act." *Id.* 102 S.Ct. at 2885 n. 3. *See also, infra* note 16, at 405.

**5.** Other authorities have opined that *Marathon* declared Section 241(a) nonseverable and extirpated the statute. *See, e.g.,* Friend, "League President Urges Elevation of Bankruptcy Courts to Article Three Status at Congressional Subcommittee Hearings," 87 Com.L.J. 394, 396 (1982); Levit and Mason, "Where Do We Go From Here? Bankruptcy Administration Post-*Marathon,*" 87 Com.L.J. 353, 355–357 (1982); Note, "Tenure and Salary Clause Restrictions on the Jurisdiction of Article I Courts," 96 Harv.L.Rev. 257, 260 (1982); *In re Cherry Pond Coal Company,* 21 B.R. 592, 593 (Dist.Ct.S.D. W.Va.1982); *In re Motion to Dismiss: Constitutionality of Jurisdiction of the Bankruptcy Court,* 23 B.R. 334, 338 (Bkrtcy.N.D.Ga.1982); *In re Otero Mills, Inc.,* 21 B.R. 645, 647 (Bkrtcy. D.N:M.1982); *In re M.J.S. Apparel, Inc.,* 22 B.R. 736, 737 (Bkrtcy.E.D.N.Y.1982); *In re Rapco Foam, Inc.,* 22 B.R. 637, 640 (Bkrtcy.W. D.N.Y.1982); *In re Jorges Carpet Mills, Inc.,* 27 B.R. 333, 337 (Bkrtcy.E.D.Tenn.1983); *In re Cumberland Enterprises, Inc.,* 22 B.R. 626, 630–631 (Bkrtcy.M.D.Tenn.1982). *But see, In the Matter of Northland Point Partners,* 26 B.R. 860, Adv. Nos. 82–2277–W and 82–

2332 W (order) (Dist.Ct.E.D.Mich., January 7, 1983); *Moore v. White Motor Corporation,* 24 B.R. 200, 202–203 (Dist.Ct.N.D.Ohio 1982); *In re Braniff Airways, Incorporated,* 27 B.R. 231 (Dist.Ct.N.D.Texas, 1983); *In re Stillman,* 26 B.R. 834 (Bkrtcy.D.Md.1983). *But cf. In re Vaniman International, Inc.,* 22 B.R. 166, 195–196 (Bkrtcy.E.D.N.Y.1982).

**6.** The distinction between jurisdiction over cases and proceedings, first to district courts, and then to bankruptcy courts, under Sections 1471(a), 1471(b), and 1471(c), and jurisdiction over property of the debtor, conferred on bankruptcy courts under Section 1471(e), has not gone unremarked. Collier, for example, notes that "[w]hat subsections (a)–(c) of Section 1471 do for title 11 cases and civil proceedings, Section 1471(e) does for property; that is, it leaves no doubt as to the jurisdictional reach of the bankruptcy court over property. Interestingly this is the one type of jurisdiction as to which vesting is not first in the district courts. As such, it may be that subsection (e), which appeared in none of the proposed House or Senate bills, and was added at the House-Senate conference, was merely intended to make explicit that all property of the debtor, which becomes property of the estate, is *in custodia legis* of the bankruptcy court." 1 Collier on Bankruptcy ¶ 3.01[g], at 3–55 (15th ed. 1982). *See also,* P. Murphy, Creditors' Rights in Bankruptcy ¶ 2.02, at 2–4 and n. 1 (1981). Section 1471(e), among other things, underpins the power of turnover found at 11 U.S.C. Section 542, 1 Collier on Bankruptcy, *supra* ¶ 3.01[g], at 3–56, which if denied to the district court, acting under the rule, would impede business reorganizations. *See, e.g., United States v. Whiting Pools, Inc.,* 674 F.2d 144 (2d Cir.1982); *In re Alpa Corp.,* 11 B.R. 281 (Bkrtcy.D.Utah 1981).

**7.** The legislative history of Section 1478(a) indicates an intent to deny removal jurisdiction in bankruptcy matters to the district court. The Senate bill, Section 219(a), S. 2266, 95th Cong., 2d Sess. (1978), like Sections 1471(a), 1471(b), and 1471(c), used a two step process in vesting removal jurisdiction, first through the district court, and then to the bankruptcy court. *See,* Sen.Rep. No. 95–989, 95th Cong., 2d Sess. 156 (1978). This procedure, however, was rejected

under appropriate circumstances, remand by a bankruptcy court. Venue, in cases and proceedings, 28 U.S.C. Sections 1472–1477, provisional remedies, 28 U.S.C. Section 1479(c), jury trials, 28 U.S.C. Section 1480(b), the power to act in "equity, law, and admiralty," 28 U.S.C. Section 1481, are keyed to the bankruptcy not the district court.[8] Severance, in short, would unhitch the bankruptcy court from these procedural moorings. And since Section 241(a) may not be rewritten by rule, *see, e.g.,* Pub.L. No. 95–598, Section 247, 92 Stat. 2672 (1975), amending 28 U.S.C. Section 2075, *Ford Motor Company v. Transport Indemnity Company,* 12 B.R. 143, 145–146 (Dist.Ct. E.D.Mich.1981), the district court would be left with a jurisdiction which is incomplete, rudderless, and in substantial measure, powerless. It seems improbable that the Supreme Court would expect district courts to handle bankruptcy cases and proceedings, many of which are complex and demanding, with such infirm and uncertain jurisdictional tools.

Finally, the stay of judgment, first to October 4, and then to December 24, confirms these views; if the damage could be papered over by rule, there would be no need for a stay. *See, In re Motion to Dismiss: Constitutionality of Jurisdiction of the Bankruptcy Court,* 23 B.R. 334, 335, 337, 338 (Bkrtcy.N.D.Ga.1982); *In re M.J.S. Apparel, Inc.,* 22 B.R. 736, 737 (Bkrtcy.E.D.N.Y.1982). The stay was deemed necessary to "afford *Congress* an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication without impairing the interim administration of the bankruptcy laws." *Marathon, supra* 102 S.Ct. at 2880. (Emphasis supplied.)[9] Indeed, the Supreme Court may have rule-making power under Section 410, and if so, did not need to wait upon the district courts for an emergency resolution. *See,* Pub.L. No. 95–598, Section 410, 92 Stat. 2687 (1978). The failure to use this power may suggest an awareness that, absent legislative action, the bankruptcy system would face a jurisdictional abyss.[10]

and replaced with Section 1478(a). Collier observes that the Senate bill was "truer" to the two step "vesting" process used in Section 1471: "The word 'truer' was used ... for the following simple reason: The section as passed ignores the fact that jurisdiction over civil proceedings is vested first in the federal district courts and then in the bankruptcy courts. The Senate version of section 1478 recognized this fact by providing for removal to the district court; the House version and the section as enacted can be said to have ignored or bypassed this two-step jurisdictional grant by providing for direct removal to the bankruptcy court." 1 Collier on Bankruptcy ¶ 3.01[2][b], at 3–62 (15th ed. 1982). Section 1478(a) thus "permits removal of a claim or cause of action to one court only—the bankruptcy court for the district in which the relevant civil action is pending. The language of the statute permits no exception." *Id.* ¶ 3.01[f][i], at 3–73. *See also,* Kennedy, "The Bankruptcy Court Under The New Bankruptcy Law: Its Structure, Jurisdiction, Venue, and Procedure," 11 St.Mary's L.J. 251, 286 n. 142 (1979).

**8.** Collier notes that the power to act in "equity, law, and admiralty," conferred on the bankruptcy court under Section 1481, is instrumental respecting other substantive provisions of the Code: "For example, entering an order for relief or an order of discharge under title 11 determines a *status,* one of the indicia of a decree in equity. . . . The bankruptcy court

may, under 11 U.S.C. § 510(c)(1) subordinate claims 'under principles of equitable subordination.' Further, the ability of the court to fashion decrees giving 'adequate protection' when required by 11 U.S.C. §§ 362–64, is totally equitable in nature." 1 Collier on Bankruptcy ¶ 3.01[5][b][ii], at 3–102 (15th ed. 1982). (Emphasis in original.)

**9.** The Court realized that Section 241(a), in the words of Justice White, had been "emasculated." Rebuilding the statute, of necessity, means reallocation of judicial power over bankruptcy matters. (Indeed, the district court has done this by rule, reversing the mandate of Section 1471(c), and rechanneling authority to the district court, which in turn, has delegated it to the bankruptcy judges as special masters.) This reallocation of judicial power may be a legislative rather than a judicial prerogative. The holding of nonseverability may have been intended to preclude judicial interference with a legislative right. *Cf.* Finley, "Article III Limits On Article 1 Courts: The Constitutionality of the Bankruptcy Court," 1982 Ann.Surv. Bank.L. 1, 24.

**10.** Section 410 provides: "The Supreme Court may issue such additional rules of procedure, consistent with Acts of Congress, as may be necessary for the orderly transfer of functions and records and the orderly transition to the

## B. Section 1471(c)

■ Assuming that Section 241(a) be severable, Section 1471(c), which refers cases and proceedings to the bankruptcy court, precludes the exercise of jurisdiction by the district court.[11] This construction of Section 1471 is supported by the legislative history and case law.

### 1. Legislative History

The Reform Act was designed to mend the fractured jurisdiction of former law. Reformers, early on, targeted the bifurcated jurisdiction of district courts and the courts of bankruptcy for abolition. The Commission on the Bankruptcy Laws of the United States, for example, noted that "a considerable part of a trustee's litigation to recover assets of the estate must be initiated in some court," including a district court, "other than the bankruptcy court." Report of the Commission on the Bankruptcy Laws of the United States, H.Doc. No. 93–137, pt. I, at 89 (1973). This "division of jurisdiction" was "objectionable" because it caused delay: "Not only are the proceedings in

new bankruptcy court system created by this Act." On its face, the "orderly transition" language may be broad enough to supply a cure for *Marathon*. The legislative history, however, notes that rules promulgated under Section 410 will "be of an internal, administrative nature, and unlike the rules prescribed under 28 U.S.C. 2075, will not ordinarily affect litigants or parties in pending cases." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 462 (1977), U.S.Code Cong. & Admin.News 1978, p. 6417. Whether the phrase "not ordinarily" implies that in extraordinary circumstances, like the present, the Court may issue a rule affecting parties in cases is uncertain. In any event, rules under Section 410 must be "consistent with Acts of Congress."

11. There may be an exception to this rule. The district court may have original jurisdiction over proceedings in bankruptcy to enjoin another court or to punish certain criminal contempts. This exception is derived by implication, in part, from Section 1481 which denies these powers to the bankruptcy court. *See,* P. Murphy, Creditors' Rights in Bankruptcy ¶ 2.04, at 2–10 and ¶ 2.06, at 2–13 (1981); Kennedy, "The Bankruptcy Court Under The New Bankruptcy Law: Its Structure and Jurisdiction," 55 Am.Bank.L.J. 63, 69–70 n. 24, 74 n. 49, 79, 89 n. 114, 90 and n. 115 (1981). *But see,*

nonbankruptcy courts [such as the district court] likely to be paced more slowly with longer intervals between successive steps, but the dockets of the nonbankruptcy courts are likely to be more crowded and commencement of the trials more likely to be postponed in such courts than in bankruptcy courts. Delay is critical in cases under the Bankruptcy Act, particularly in the business cases where litigation is most likely to occur. This is true because of the prejudicial effect it might have on prospects for rehabilitating an enterprise in financial distress and the aggravated risk of deterioration of the estate in the course of liquidation." *Id.* It was believed that "[a] comprehensive grant of jurisdiction to the bankruptcy courts over all controversies arising out of any bankruptcy or rehabilitation case would greatly diminish the basis for litigation of jurisdictional issues which consumes so much time, money, and energy of the bankruptcy system and of those involved in the administration of debtors' affairs. It would foster the development of a more uniform, cohesive body of substantive

1 Collier on Bankruptcy ¶ 7.05[1][a], at 7–58 (15th ed. 1982).

The exception for injunctions and contempts likewise explains Section 1471(d) which "does not prevent" a district court, under appropriate circumstances, from "abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." Some have suggested that Section 1471(d) demonstrates that the district court has general, original jurisdiction under Sections 1471(a) and 1471(b). This negative inference, however, is unpersuasive for at least two reasons. First, no negative inference may be drawn respecting the jurisdiction of the district court over cases under Section 1471(a), since Section 1471(d) governs proceedings only. Abstention over cases is determined by the bankruptcy court under 11 U.S.C. Section 305(a), and is nonreviewable by the district court under 11 U.S.C. Section 305(c). *See, e.g., In re Colonial Ford, Inc.,* 24 B.R. 1014, 9 B.C.D. 1108, 1111–1112 n. 10 (Bkrtcy.D.Utah 1982). Second, as discussed below, the legislative history and case law show that the district court may not exercise general, original jurisdiction over proceedings under Section 1471(b). This legislative history and case law may be reconciled with Section 1471(d), if at all, by reference to the exception for injunctions and contempts which has been carved out of Section 1471(c).

and procedural law which would be applicable to the administration of estates under the Bankruptcy Act. *The withdrawal from state and federal district courts of jurisdiction of the so-called plenary proceedings,* when coupled with the establishment of uniform federal standards and rules, as proposed by the Commission for adoption and application in lieu of the diverse state laws governing debtors' and creditors' rights, should eliminate a source of uncertainty and division of authority which has characterized bankruptcy law." *Id.* at 90–91. (Emphasis supplied.)

The Commission views were reduced to legislation which, after several years of study and revision, evolved into H.R. 8200, 95th Cong., 1st Sess. (1977). H.R. 8200 would have established bankruptcy courts independent of the district courts. Assigning bankruptcy cases and proceedings to the district courts was considered but disapproved "for a variety of reasons":

The district courts are generally overburdened. Their caseload has increased dramatically in recent years without a corresponding increase in the number of judges. Though a judgeship bill is presently pending in both Houses of Congress, the increased number of district judges proposed in those bills probably would be inadequate to absorb the bankruptcy caseload.

Second, the Speedy Trial Act requires that criminal matters be given precedence on the district court calendars. The Constitution does not require a "speedy trial" for bankruptcy matters as it does for criminal cases. Thus, criminal matters would continue to be accorded priority. However, the nature of bankruptcy is such that it, too, for practical reasons, requires expeditious disposition. The original Bankruptcy Act in 1898 left many matters to the State courts for disposition because often they were speedier forums than the bankruptcy courts. Today, however, the State courts are seriously overburdened, although the bankruptcy courts are nearly current with their dockets. Such delays as there are in bankruptcy cases often result from

the need for a matter to proceed to decision in a State court. H.R. 8200 does much to alleviate the problem, but the change proposed would be to little avail if bankruptcy disputes were required to fight the judicial logjam caused by the Speedy Trial Act and by the volume of litigation pending in district courts. Assets would deteriorate; creditors would be delayed in recovering money to which they are justly entitled; and, to use the familiar medical metaphor, in business reorganization cases, the patient would die on the operating table while diagnosis slowly proceeded.

Third, assignment of bankruptcy disputes to the district judges would be generally unacceptable because district judges have long made clear their lack of interest in bankruptcy matters. In 1959, the Judicial Conference recommended legislation that would remove one of the last remaining functions of the district judges in bankruptcy cases: making an order of reference. The law now requires automatic reference, and district judges no longer have any involvement in bankruptcy cases. More recently, the Judicial Conference has made known its lack of interest in bankruptcy cases by its recommendation that they continue to be handled by bankruptcy judges, and not by district judges.

Finally, a generalist judge that only occasionally handled bankruptcy cases would not have a sufficient understanding of the law and the fact situations that arise in bankruptcy cases. He would be unable to make the quick decisions that these cases so often require. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 14–15 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5975–76.

The Senate, in a counterproposal, S. 2266, 95th Cong., 2d Sess. (1978), rejected the court structure of H.R. 8200, but agreed that jurisdiction should not be divided between district and bankruptcy courts. S. 2266 established the bankruptcy court as an "adjunct" of the district court, but commissioned the bankruptcy court to exercise all

of the jurisdiction of the district court. This delegation of jurisdiction meant that "[a]ctions that formerly had to be tried in the state court *or in the Federal district court,* at great cost and delay to the estate, may now be tried in the bankruptcy court," Sen.Rep. No. 95–989, 95th Cong., 2d Sess. 153 (1978), U.S.Code Cong. & Admin.News 1978, p. 5939. (Emphasis supplied.) *See also* H.R.Rep. No. 95–595, *supra* at 445, U.S.Code Cong. & Admin.News 1978, p. 6400. Moreover, the "statutory scheme" of S. 2266 "[was] adopted [so that] the *totality of this jurisdiction* .... shall be exercised by the bankruptcy court, which is created as an adjunct of each U.S. district court." Sen.Rep. No. 95–989, *supra* at 153, U.S.Code Cong. & Admin.News 1978, p. 5939. (Emphasis supplied.) Elsewhere the Senate Report emphasizes that the "expanded jurisdiction vested in the U.S. district courts" is "delegated by statute *for exercise exclusively by bankruptcy judges,* subject always to review, as under present law, by the district courts," *id.* at 16, U.S.Code Cong. & Admin.News 1978, p. 5802 (emphasis supplied), and reemphasizes that "except where the bankruptcy court abstains from hearing an action or proceeding arising under or related to a case under title 11, *all cases* under title 11 and *all civil actions and proceedings* arising under or related to cases under title 11 *are to be before the bankruptcy judge*.... [The amendments on jurisdiction], while conferring expanded jurisdiction in bankruptcy cases and related civil actions and proceedings directly upon the district courts, *delegate the exclusive exercise of that jurisdiction at the trial level to bankruptcy judges.*" *Id.* at 18, U.S. Code Cong. & Admin.News 1978, p. 5804. (Emphasis supplied.)

The Senate version of the legislation was adopted and enacted as Section 1471 of the Reform Act. As noted above, it confers jurisdiction on the bankruptcy court using a two step process, first to the district court, and then to the bankruptcy court. Floor leaders of the legislation explained, however, in words which echoed the Commission, House, and Senate Reports, that the jurisdiction initially vested in the district court was "*completely delegated to the bankruptcy court*.... The bankruptcy court is thus given *pervasive* jurisdiction over all proceedings arising in or relating to bankruptcy cases. In addition, the bankruptcy court is given *exclusive* jurisdiction of the property of the estate in a case under title 11." 124 Cong.Rec. S17,424 (daily ed., October 6, 1978); 124 Cong.Rec. H11,107–11,108 (daily ed., September 28, 1978). (Emphasis supplied.)[12] Congress believed

12. Commentators have remarked upon the legislative rationale for Section 1471(c). Judge Conrad Cyr, in 1978, while the Reform Act was incubating in Congress, wrote that "it has become an increasingly intolerable inefficiency to permit the continued adulteration of bankruptcy court jurisdiction in deference to overcrowded state *and federal courts* of general jurisdiction." Cyr, "Structuring a New Bankruptcy Court: A Comparative Analysis," 52 Am.Bank. L.J. 171, 173 and n. 1 (1978). (Emphasis in original omitted in part.) He did not foresee any lessening of this problem: "The federal district courts determine many of the more important and prominent issues of our time. There seems little likelihood that either the volume, scope or importance of the general jurisdiction of the federal district courts will be restricted appreciably in the foreseeable future. The prominence and importance universally attributed to much of the litigation overcrowding the dockets of the federal district courts cannot be compared to the much less glamorous gruel of the bankruptcy court. It seems all too predictable that the time and attention of the district judge of the bankruptcy division would soon be diverted to nonbankruptcy cases to such an extent that bankruptcy litigation would become a distinctly secondary concern. The unremitting demands of the enormous volume of large and small insolvency cases would then require reference by the district judge of the bankruptcy division to magistrates or special masters appointed to hear and report. It is very likely that it would not be long after the establishment of such a system that we would have come full circle—back to the referee system, with the probable additional disadvantage that the future 'referees' would be generalists, rather than specialists." *Id.* at 148–149. "[A]vailable empirical data strongly suggest that neither the opportunity nor the commitment required to develop or maintain expertise in bankruptcy law and practice is likely to exist on the part of most of the otherwise overburdened federal judges." *Id.* at 157. Others have observed that "[t]he Act's jurisdictional scheme caused additional delay whenever a bankruptcy court could not take jurisdiction of an issue but had to await its resolution in a

there was no time, expertise, or inclination in the district courts, and therefore, vested jurisdiction "completely" and "exclusively" in the bankruptcy courts.[13]

### 2. Case Law

The Supreme Court and several district courts, recognizing the import of this legislative history, and in more contemplative times, have read Sections 1471(a), 1471(b), and 1471(c) to mean that district courts have the shadow but not the substance of power, all of which must be exercised by the bankruptcy courts.

The plurality in *Marathon,* for example, gave this construction to the statute, noting that Sections 1471(a) and 1471(b) are a "facade" because "the bankruptcy courts exercise '*all* of the jurisdiction' conferred by the act on the district courts." *Marathon, supra* 102 S.Ct. at 2879. (Emphasis in original.)[14] Indeed, this view is necessary to their holding "that § 241(a) ... has impermissibly removed most, if not all, of 'the essential attributes of the judicial power' from the Art. III district court, and has vested those attributes in a non-Art. III

adjunct." *Id.* at 2880. The concurring justices were likewise "of the opinion that the extent of review by Art. III courts provided on appeal from a decision of the Bankruptcy Court in a case such as Northern's does not save the grant of authority to the latter... All matters of fact and law in whatever domains of the law to which the parties' dispute may lead are to be resolved by the Bankruptcy Court in the first instance, with only traditional appellate review apparently contemplated by Art. III courts. Acting in this manner the Bankruptcy Court is not an 'adjunct' of either the District Court or the Court of Appeals." *Id.* at 2882.

*Marathon Pipeline Company v. Northern Pipeline Construction Company,* 12 B.R. 946 (Dist.Ct.Minn.1981), the district court opinion, also noted the two step process of Section 1471, and observed that "the ultimate repository of this jurisdiction is not the federal district court. 28 U.S.C. § 1471(c) assigns the jurisdiction granted to the district courts by subsections (a) and (b) to the bankruptcy courts. This assignment or

nonbankruptcy forum, where proceedings are usually slower and more likely to be postponed. Thus, commentators calling for bankruptcy reform often complained that state courts *or federal district courts sitting at law or in equity* heard far too many bankruptcy matters because 'the same results could be more efficiently and speedily reached in one bankruptcy forum'". Note, "Selective Exercise of Jurisdiction in Bankruptcy-Related Civil Proceedings," 59 Tex.L.Rev. 325, 329 (1981) (emphasis supplied), citing Drake, "The Judges' Bankruptcy Bill and the Commission's Bill: A Question of Access to the Judicial Process," 26 Mercer L.Rev. 1009, 1011 (1975).

**13.** The Senate version, Section 216 of S. 2266, which would have amended old 28 U.S.C. Section 1334 and added a new paragraph (d)(1), said that the bankruptcy court "*may* exercise" the jurisdiction given to the district court. The Senate Report, however, emphasized that "[t]he use of the term 'may' in this section is not intended to imply that the district court has any discretion whatsoever in withholding bankruptcy cases or civil proceedings arising under title 11 or arising under or related to a case under title 11 from the bankruptcy court." Sen.Rep. No. 95–989, *supra* at 154, U.S.Code Cong. & Admin.News 1978, p. 5940. To remove any doubt however, Section 1471(c), as enacted, was changed to read the bankruptcy

court "*shall* exercise" the jurisdiction given to the district court. Similarly, Pub.L. No. 95–598, as passed, amends title 28 by adding a new Chapter 6. Section 151 of Chapter 6 creates and composes the new bankruptcy courts which are to be "adjuncts" of the district courts. Section 151(3) provides for the designation and assignment of judges from circuit and district courts to sit on the new bankruptcy courts. *See generally,* Kennedy, "The Bankruptcy Court Under The New Bankruptcy Law: Its Structure and Jurisdiction," 55 Am.Bank. L.J. 63, 66–79 (1981). This provision might be surplusage if these judges, who are otherwise assignable throughout the federal system, could exercise jurisdiction through the district court.

**14.** The "two step process" was a legislative "legerdemain," "circumlocution," "stratagem," or "sleight of hand" to sidestep constitutional problems. *See, e.g.,* 1 Collier on Bankruptcy ¶ 2.01[1][c], at 3–36—3–37 (15th ed. 1982); *id.* ¶ 3.01[e], at 3–44; Kennedy, "The Bankruptcy Court Under The New Bankruptcy Law: Its Structure and Jurisdiction," 55 Am.Bank.L.J. 63, 80–81 (1981); Lieb, "Jurisdiction and Venue in Bankruptcy Litigation," 1982 Ann.Surv. Bank.L. 69, 76, 78.

transfer of jurisdiction from the district courts to the bankruptcy courts is mandatory, as the bankruptcy courts 'shall exercise all the jurisdiction [so] conferred.' Thus, the statutory scheme is constructed in such a manner as to remove with one hand what was just previously bestowed by the other." *Id.* at 79,491–79,492.

In *Chamberlain Livestock Auction, Inc. v. Aberdeen Production Credit Association,* 22 B.R. 750 (Dist.Ct.S.D.1982), the bankruptcy court abstained from hearing a suit for conversion and transferred the proceeding to the district court. The district court dismissed the proceeding for want of diversity jurisdiction. Plaintiffs asked the district court to vacate the order of dismissal, arguing that it had jurisdiction under Section 1471(b). The district court rejected this argument, stating that it "ignores the intent of Congress when it passed the Bankruptcy Code in 1978. Subsections (a) and (b) of 28 U.S.C. § 1471 were designed by Congress to ensure the constitutionality of the grant of expansive jurisdiction to bankruptcy courts by making them adjuncts of the district courts... The intent of Congress ... was to channel the bankruptcy proceedings to the bankruptcy courts. There appears no indication that Congress intended that the district courts have expanded jurisdiction to hear new kinds of proceedings." *Id.* at 751. The motion to vacate the order of dismissal was denied.

In *In re Related Asbestos Cases,* 23 B.R. 523 (Bkrtcy.N.D.Cal.1982), plaintiffs had brought products liability actions against several asbestos manufacturers in district court. Two manufacturers, Unarco and Johns-Manville, filed petitions under Chapter 11 of the Bankruptcy Code. The automatic stay, found at 11 U.S.C. Section 362(a), barred continuation of the suits against Unarco and Johns-Manville, but it was questioned whether the stay protected the nondebtor codefendants. These codefendants argued that the district court was without jurisdiction to construe the scope of Section 362(a) and that plaintiffs must obtain relief from the stay from the bankruptcy courts. The codefendants, in support of

this position, cited *In re Coleman American Companies,* 8 B.R. 384 (Bkrtcy.D.Kan.1981), which held that a creditor must obtain relief from the stay in the bankruptcy court where the case is commenced. The district judge in *Related Asbestos Cases* distinguished *Coleman,* noting that he was construing the scope of the stay, but agreed that he had no power to grant relief from the stay: "[T]he original bankruptcy courts alone would have exclusive power to lift an actual stay under section 362. A contrary conclusion would contravene the intention of Congress to centralize litigation concerning the bankrupt's affairs in a single forum." *In re Related Asbestos Cases, supra* at 526.

In *In re Wolf,* CCH Bank.L.Rep. ¶ 67,947 (D.Mass., February 9, 1981) creditors had filed a petition for involuntary bankruptcy against a debtor under 11 U.S.C. Section 303. The debtor moved to dismiss or abstain in the bankruptcy court. While this motion was pending, debtor filed an action in district court, seeking a declaratory judgment that the bankruptcy court should dismiss the involuntary petition. The creditors sought dismissal of the suit in district court on the ground that it lacked subject matter jurisdiction. The district court agreed "that the present posture of the ... dispute does not permit the exercise of either appellate or original jurisdiction. Appellate jurisdiction does not exist because the bankruptcy court has not yet issued an order on the debtor's motion to dismiss... Until an order is issued ... there is nothing for this court to review. Original jurisdiction is inappropriate because a party may not use an action for declaratory relief as a substitute for appeal. The debtor may not by pass [sic] the appellate procedures set out in the 1978 Reform Act by bringing a declaratory motion. The debtor's only recourse, therefore, was to await the decision of the bankruptcy court on his motion to dismiss." *Id.* at 78,879–78,880. *Wolf* thus implies that district courts have appellate but not original jurisdiction under the Reform Act.

In *In re William O. Petrusch, Jr. d/b/a B & L Distribution Center,* 14 B.R. 825, 8 B.C.D. 180 (Bkrtcy.N.D.N.Y.1981), a bankruptcy court enjoined a union from picketing a business which had filed a petition under Chapter 13 of the Bankruptcy Code. The union, claiming that the injunction violated the Norris-LaGuardia Act, sought a stay from the district court, pending appeal. The debtor argued that the district court "has no authority to overturn ... the Bankruptcy Court's injunction since, in matters of bankruptcy, the district courts and the bankruptcy courts have concurrent jurisdiction under 28 U.S.C. § 1471." *Id.* 14 B.R. at 826 n. 1, 8 B.C.D. at 180 n. 1. The district court rejected this argument, noting that it was acting in an appellate not a trial capacity. *Id. See also,* Lieb, "Jurisdiction and Venue in Bankruptcy Litigation," 1982 Ann.Surv.Bank.L. 69, 101–102. Like *Wolf, Petrusch* implies that district courts have appellate but not original jurisdiction under the Reform Act.

Bankruptcy court decisions, pre- and post-*Marathon,* have concurred with this construction of Section 1471. *See, e.g., In re Motion to Dismiss: Constitutionality of Jurisdiction of the Bankruptcy Court, supra* 23 B.R. at 338,345; *In the Matter of the Schear Realty & Investment Co., Inc.,* 9 B.C.D. 1210, 1215 (Bkrtcy.S.D.Ohio 1982); *In the Matter of Century Entertainment Corp.,* 20 B.R. 126, 128 (Bkrtcy.S.D.Ohio 1982); *In re Jorges Carpet Mills, Inc.,* 27 B.R. 333, 337–338 (Bkrtcy.E.D.Tenn.1983). Other authorities are in accord. *See, e.g.,* W. Norton and R. Lieb, Reconstituting the Bankruptcy Court in 1982: Congressional Constitutional Options 6–7, 13–14 (1982); Babitt, "The Bankruptcy Court, Its Judges, Their Jurisdiction and Powers, and Appeals, Under Title 11 of the 1978 Bankruptcy Reform Act: Transition and Beyond," 1979 Ann.Surv.Bank.L. 89, 92, 95; Clarkson, "A Brief Overview of the Congressional Debate on the Bankruptcy Court System," 1979 Ann.Surv.Bank.L. 63, 69; Finley, "Article III Limits on Article I Courts: The Constitutionality of the Bankruptcy Court," 1982 Ann.Surv.Bank.L. 1, 6, 22–23; Krattenmaker, "Article III and Judicial Independence: Why the New Bankruptcy Courts are Unconstitutional," 70 Geo.L.J. 297, 308 (1981); "Brief for the United States of America in Support of the Constitutionality of the Provisions of 28 U.S.C. § 1471 Vesting in the United States District Court and Delegating to Adjunct Bankruptcy Courts Jurisdiction Over All Bankruptcy-Related Controversies," reprinted in 56 Am.Bank.L.J. 97, 99, 108 (1982). *But cf.* Kennedy, "The Bankruptcy Court Under The New Bankruptcy Law: Its Structure and Jurisdiction," 55 Am. Bank.L.J. 63, 77 (1981).[15]

The rule is inconsistent with the language, history, and purpose of Section 1471(c). District courts, before December 24, have disclaimed original jurisdiction under Section 1471. Plaintiff, to counter this history and these cases, argues that the jurisdiction of the district court, like a "springing use," was "revived" when the stay expired. This argument, however, in effect, amends the statute and invents a

---

**15.** Three district court opinions have disagreed with this construction of Section 1471. In *Moore v. White Motor Corporation,* 24 B.R. 200 (Dist.Ct.N.D.Ohio 1982), Judge Aldrich opines that district courts may exercise trial jurisdiction under Section 1471. She admits, however, that the "issue is not specifically before this Court at this juncture." *Id.* at 203. (Indeed, she asserts jurisdiction under Section 1334 as an appellate court. *Id.* at 201.) In *In the Matter of Northland Point Partners,* 26 B.R. 860 (order) (E.D.Mich.1983), Judge DeMascio remarks that "it appears to us that the power conferred by 28 U.S.C. § 1471(a) and (b) was arguably not affected by the *Marathon* decision. *Id.* at 861. Although unclear, this conclusion may flow from a belief that Section 241(a) is severable. *Id.* In any event, the history and case law dealing with Section 1471 are not discussed. In *In re Braniff Airways, Incorporated,* 27 B.R. 231 (Dist.Ct.N.D.Tex.1983), Judge Mahon, relying upon the severability of Section 241(a), finds that district courts have trial jurisdiction under Section 1471. The history and case law dealing with Section 1471 are not discussed.

jurisdiction which the district court never possessed.[16]

## IV. TRANSITION STATUTES

Plaintiff points to the transition statutes as an alternate basis for jurisdiction over bankruptcy matters in the district court. It argues that Section 404(a) continues the court of bankruptcy of former law, that this court of bankruptcy was the district court, and therefore the district court may act in bankruptcy matters. Plaintiff further argues that Section 405(a)(2) confirms this view. Section 405(a)(2) provides: "Except as provided in subsection (c) of this section, any proceeding in a court of bankruptcy in a case under title 11 of the United States Code that is not before the United States bankruptcy judge shall be before the judge of the court of bankruptcy for the district in which such case is pending." The "judge of the court of bankruptcy" is the district judge, it is said, and he may hear bankruptcy matters when the bankruptcy judge may not. These arguments are unpersuasive, however, for several reasons.[17]

First, the arguments beg the question of jurisdiction. Assuming the district judge or district court may sit as the court of bankruptcy continued under Section 404(a), what is the source of its jurisdiction? The answer is in Section 405(b) which makes Section 241(a) applicable to the courts of bankruptcy during transition. Hence, the source of jurisdiction for the district judge or district court, *qua* district court or court of bankruptcy, is the same, *viz.,* Section 241(a). As noted above, however, Section 241(a) is

---

**16.** Plaintiff argues that Section 241(a) is severable and that the death of Section 1471(c) gives life to Sections 1471(a) and 1471(b). The rules of severance, however, do not allow a "springing use," especially in the face of contrary legislative intent or inadequate statutory remainder.

Severance is impermissible where it is "evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not" or where the balance of a statute is not "fully operative as a law." *Buckley v. Valeo,* 424 U.S. 1, 108, 96 S.Ct. 612, 677, 46 L.Ed.2d 659 (1976). Even where a statute contains a severability clause, it will not apply if the effect "would be to create a program quite different from the one the legislature actually adopted." *Sloan v. Lemon,* 413 U.S. 825, 834, 93 S.Ct. 2982, 2987, 37 L.Ed.2d 939 (1973).

These tests underline the nonseverability of Section 241(a). The plurality and concurrence were concerned with splitting jurisdiction between forums. Thus, footnote 40 emphasizes that "Congress has vested jurisdiction over this and all matters related to cases under title 11 in a *single non-Art. III court,* and has done so pursuant to a *single statutory grant of jurisdiction,*" and that "one of the express purposes of the Act was to ensure adjudication of all claims in a *single forum* and to avoid the delay and expense of jurisdiction disputes." For this reason, it would not be "Congress' choice ... to have this case 'routed to the United States district court of which the bankruptcy court is an adjunct.'" *Marathon, supra* 102 S.Ct. at 2880 n. 40. (Emphasis supplied.)

This reading of legislative intent is consistent with the statutory scheme. Jurisdiction over cases and proceedings is taken from the district courts and given to the bankruptcy courts. Jurisdiction over property is given to the bankruptcy courts. Removal jurisdiction and the option to remand are given to the bankruptcy courts. Venue, provisional remedies, jury trials, and the power to act in "equity, law, and admiralty" are tied to the bankruptcy courts.

In short, the indivisibility of jurisdiction conferred on the bankruptcy court is the reason for nonseverance. Severance of Section 1471(c) from Section 241(a), far from working a "revival" of Sections 1471(a) and 1471(b), offends legislative intent, and leaves a statutory remainder which is not "fully operative as a law."

The dissent, in the opinion of Justice White, argued that the Court should sever the jurisdiction of the bankruptcy court over *Marathon*-type proceedings. This, in its view, "would remove from the jurisdiction of the bankruptcy judge only a tiny fraction of the cases he is now empowered to adjudicate and would not otherwise limit his jurisdiction." *Marathon, supra* at 2884 (Justice White, dissenting opinion). The dissent did not argue, however, that if the entire jurisdiction of the bankruptcy court were stricken, the jurisdiction of the district court nevertheless could be severed and revived. Put differently, the dissent argued that legislative intent would permit severance of *Marathon*-type proceedings. It did not argue that legislative intent would allow severance of the bankruptcy court and its replacement by the district court.

**17.** Plaintiff has not argued that *Marathon* worked a "revival," *via* Section 404(a), of jurisdiction under the old Bankruptcy Act. The revival argument, in any event, has been soundly discredited. *See, e.g.,* H.R.Rep. No. 97–807, 97th Cong., 2d Sess. 88–107 (1982).

nonseverable and was stricken by *Marathon,* leaving no jurisdiction for the district judge or district court, acting in any capacity, to exercise. Indeed, *Marathon* involved a transition case and its ruling applied to the transition statutes. *See, In re Motion to Dismiss: Constitutionality of Jurisdiction of the Bankruptcy Court, supra* 23 B.R. at 345–346.[18]

Moreover, assuming that Section 241(a) be severable, Section 405(a)(1), like Section 1471(c), mandates the reference of all cases and proceedings in bankruptcy to the bankruptcy judge and thereby prevents the exercise of jurisdiction by the district judge. *See, e.g.,* H.R.Rep. No. 95–595, *supra* at 460; 1 Collier on Bankruptcy ¶ 7.05[1][a], at 7–55—7–59 (15th ed. 1982). *Cf. In re Jorges Carpet Mills, Inc.,* 27 B.R. 333, 338 (E.D. Tenn.1982).

Section 405(a)(2), contrary to the contention of plaintiff, does not alter this mandate if read with Sections 405(a)(1) and 405(c). Sections 405(a)(1)(A), (B), and (C) forbid bankruptcy judges from hearing motions to enjoin another court, certain criminal contempts, and appeals from a bankruptcy judge. Sections 405(c)(1) and (2) make Section 1334 operative during transition and constitute the district court as an appellate tribunal.

Section 405(a)(2) was designed to mesh with Sections 405(a)(1) and 405(c). Section 405(a)(2) provides that where a proceeding is not before a bankruptcy judge, meaning proceedings enumerated in Section 405(a)(1)(A), (B), and (C), such as certain criminal contempts, they may be heard by the district judge. *See, e.g.,* 1 Collier on Bankruptcy, *supra* ¶ 7.05[1][b], at 7–59—7–61; W. Norton and R. Lieb, The Aftermath of Northern Pipeline: Bankruptcy Jurisdiction Under Local Court Rule 25 (1983); Kennedy "The Bankruptcy Court Under the New Bankruptcy Law: Its Structure and Jurisdiction," *supra* at 69 n. 24, 74 n. 49, 89 n. 114. Section 405(a)(2) is made subject to Section 405(c) to emphasize that the district judge shall not function simultaneously in a trial and appellate capacity.

---

18. The status of the district judge or district court as a court of bankruptcy under Section 404(a), as noted in the text, adds nothing to the debate over jurisdiction under the Reform Act.

    The court of bankruptcy during transition is a forum to deal with cases still pending under and governed by the former Bankruptcy Act. *See,* Pub.L. No. 95–595, Section 403(a), 92 Stat. 2683 (1978). *Cf. Central Trust Co. v. Creditors' Committee,* 454 U.S. 354, 102 S.Ct. 695, 70 L.Ed.2d 542 (1982).

    The court of bankruptcy, as such, serves no purpose under the Reform Act. It is continued during transition, but "[e]ach of the courts of bankruptcy so continued shall constitute a separate department of the district court that is such court of bankruptcy." Read literally, Section 404(a) says that the court of bankruptcy is at once the district court and a separate department of the district court. This confusion is compounded by Section 405(b) which grants the court of bankruptcy jurisdiction under Section 241(a) where the bankruptcy and district courts are functionally distinct entities. This view is reinforced by Sections 405(a)(2) and 405(c) which, as discussed below, with narrow exceptions, confine the district judges and district court to an appellate role.

    In short, the bankruptcy system, under the transition statutes, is the analogue of the court structure and jurisdiction post-transition. This is evidenced by the many parallels between titles II and IV of the Reform Act, as well as Pub.L. No. 95–598, Section 406, 92 Stat. 2686 (1978) which requires the Administrative Office of United States Courts to make "continuing studies and surveys of conditions in the judicial districts to determine," among other things, "the number of bankruptcy judges of the United States bankruptcy courts established under Section 201 of this Act that will be needed after March 31, 1984, to provide for the expeditious and effective administration of justice." These prognostications would be inaccurate unless the transition system, from which measurements are made, will be substantially the same as the post-transition system. Indeed, the House Report notes that the transition courts will operate "enough like the proposed new court system so that the measurement process of case-load and judicial time requirements will be accurate." H.R.Rep. No. 95–595, *supra* at 459, U.S.Code Cong. & Admin.News 1978, p. 6415. *See also, id.* at 460; 1 Collier on Bankruptcy ¶ 2.01[d], at 2–30 (15th ed. 1982); *id.* ¶ 3.01[1][a], at 3–10; *id.* ¶ 7.04[1], at 7–25—7–27; *id.* ¶ 7.04[5], at 7–49—7–50; *id.* ¶ 7.05[1] 7 55; *In the Matter of Glover, Inc.,* 697 F.2d 907, 910 (10th Cir.1983); *In re Callister,* 673 F.2d 305, 306 (10th Cir.1982); *In re Shannon,* 670 F.2d 904, 906 (10th Cir.1982).

Plaintiff's construction ignores the harmonious relation of Sections 405(a)(1), 405(a)(2), and 405(c). It would broaden the matters triable before the district judge beyond those enumerated in Sections 405(a)(1)(A), (B), and (C), in derogation of the mandatory reference of Section 405(a)(1), in contravention of the proviso which precludes the district judge from wearing trial and appellate hats in Section 405(a)(2), and in opposition to the legislative intent earlier described.[19]

## V. CONCLUSION

The rule does not confer power to hear this proceeding because it rests upon faulty jurisdiction. If the rule dies under law, equity cannot resuscitate it. Equity so employed would become inequity to those who improvidently—or involuntarily—relied. The complaint must be dismissed.[20]

Recognizing, however, that the law in this case may be, as Justice Holmes suggested, "nothing more" than a "prophe[cy] of what the [appellate] courts will do in fact," O. Holmes The Path of the Law (1897), the judgment dismissing the complaint is stayed and certified to the district court for review under paragraphs (d)(2) and (e)(2)(A)(ii) of the rule.

---

**19.** Section 405(a)(2) is not broad enough, in any event, to validate the rule, since at most it permits the district judge to hear proceedings not cases under title 11.

**20.** Because of the disposition of this proceeding on jurisdictional grounds, it is unnecessary to determine whether the district court has authority to promulgate the rule, and if so, whether the rule has been issued consistent with that authority. Nor is it necessary to decide whether, under the guidelines of *Marathon,* or within other relevant restraints, the rule properly delegates power from the district court to bankruptcy judges as special masters.