**In re Kent D. RICHARDSON, and F. Nadine Richardson, Debtors.**

**Duane H. GILLMAN, Trustee of the estate of Kent D. and F. Nadine Richardson, Plaintiff,**

v.

**PRESTON FAMILY INVESTMENT COMPANY, and First Interstate Bank of Utah, Defendants.**

Bankruptcy No. 82C–00736.
Civ. Proceeding No. 82PC–0746.

United States Bankruptcy Court,
D. Utah.

Feb. 7, 1983.

---

Duane H. Gillman, Boulden & Gillman, Salt Lake City, Utah, for plaintiff.

Stephen T. Preston, Salt Lake City, Utah, for defendant Preston Family Inv. Co.

Roy A. Williams, Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah, for defendant First Interstate Bank of Utah.

## MEMORANDUM OPINION ON SUBJECT MATTER JURISDICTION

GLEN E. CLARK, Bankruptcy Judge.

Preston Family Investment Company, defendant in a civil proceeding brought by a trustee in bankruptcy, arising under title 11, United States Code, and commenced before June 28, 1982, requests dismissal for lack of subject matter jurisdiction. The motion is granted.

### FACTUAL AND PROCEDURAL BACKGROUND

Debtors filed a joint petition for relief under Chapter 7 on March 25, 1982. On June 15, 1982, the trustee of the debtors' estates filed this action to avoid a transfer of property under 11 U.S.C. §§ 544(a)(3), 544(b), and 548(a)(2). The trustee then filed a motion for summary judgment which was granted in part and denied in part by an order entered on October 2, 1982. It was held, as a matter of law, that the trustee could not avoid the transfer under Section 544(a)(3), that a summary judgment on the trustee's cause of action under Section 544(b) was not then appropriate, and that the trustee was entitled to a partial summary judgment on his cause of action under Section 548(a)(2). *Gillman v. Preston Family Investment Co. (In re Richardson)*, 23 B.R. 434 (Bkrtcy.D.Utah 1982). Thus, the trustee's causes of action under Sections 544(b) and 548(a)(2) were left for trial, which was set for January 14, 1983. At

trial, defendant Preston Family Investment Co. moved to dismiss the trustee's complaint for lack of subject matter jurisdiction.[1] In support of its motion, Preston relies on *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (hereinafter, *Marathon*).

*Marathon* holds that the grant of subject matter jurisdiction to the bankruptcy courts in Section 241(a) of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 241(a), 92 Stat. 2668 (codified at 28 U.S.C. §§ 1471–1482), violates Article III of the Constitution of the United States. *Marathon* also holds Section 241(a) invalid in its entirety. The Court refused to sever any constitutional portions of the jurisdictional grant from those portions which are not constitutional.[2]

The Supreme Court's judgment in *Marathon* did not take effect until December 24, 1982. *See* page 410, below. On December 24, the United States District Court for the District of Utah adopted a rule which became effective December 25. That rule applies "to all bankruptcy cases and proceedings not governed by the Bankruptcy Act of 1898 as amended, and filed on or after October 1, 1979." Section (h). The trustee's action falls within this provision. Sections (c)(1) and (h) of the rule refer this proceeding to this bankruptcy judge.

The trustee argues that either this court or the United States district court for this district has subject matter jurisdiction of this action. First, the trustee argues, this court retains jurisdiction under Section 241(a) of the Bankruptcy Reform Act. This action was filed on June 15, 1982, before the date of the *Marathon* decision and before the *Marathon* judgment became effective. In the trustee's view, because the Supreme Court ruled that its holding in *Marathon* would apply only prospectively, this court retains subject matter jurisdiction under

Section 241(a). Alternatively, the trustee argues that this court retains jurisdiction under 11 U.S.C. § 105 and Section 404(a) of the Bankruptcy Reform Act of 1978. The trustee's final argument is that the United States district court for this district derives jurisdiction from 28 U.S.C. § 1331 and that the rule adopted in this district made a valid reference to this bankruptcy judge of the trial of this action. These arguments are analyzed below.

## THIS COURT DOES NOT RETAIN SUBJECT MATTER JURISDICTION OF THIS ACTION UNDER THE "PROSPECTIVE ONLY" HOLDING OF *MARATHON*

"[O]ur decision today," the Court said in *Marathon,* "shall apply only prospectively." 102 S.Ct. at 2880. Appended to this sentence is footnote 41, which cites portions of three cases: *Buckley v. Valeo,* 424 U.S. at 142, 96 S.Ct. 612 at 693, 46 L.Ed.2d 659; *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 376–377, 60 S.Ct. 317, 319–320, 84 L.Ed. 329 (1940); *Insurance Corp. v. Compagnie des Bauxites,* —— U.S. ——, ——, n. 9, 102 S.Ct. 2099, 2104 n. 9, 72 L.Ed.2d 492 (1982). The Court's intention is illuminated, not only by the authorities cited in footnote 41, but by the context in which its "prospective only" holding was made.

Before reaching the issue of the possible retroactive application of its decision, the Court "concluded that the broad grant of jurisdiction to the bankruptcy courts contained in § 241(a) is unconstitutional." 102 S.Ct. at 2880. Then, the Court asked "whether [its] holding should be applied retroactively to the effective date of the Act," October 1, 1979. *Id.* The Court turned its attention to *Marathon*'s effect on actions taken pursuant to the jurisdictional grant of Section 241(a) between October 1, 1979 and June 28, 1982, the date of the *Marathon* opinion.

---

1. *See* Rule 712 Bankr.R.P. and Rule 12(b)(1) and (h)(3) Fed.R.Civ.P.

2. For a thorough discussion of the holding of *Marathon, see In re Color Craft Press, Ltd.,* 27

B.R. 392 (Bkrtcy.D.Utah 1983). I concur completely in the views expressed *In re Color Craft Press* and adopt that opinion as a part of this opinion.

Analysis of the retroactivity question began with a review of "the three considerations recognized by our precedents as properly bearing upon the issue of retroactivity. They are, first, whether the holding in question 'decid[ed] an issue of first impression whose resolution was not clearly foreshadowed' by earlier cases, (citation omitted); second, 'whether retrospective operation will further or retard [the] operation' of the holding in question (citation omitted); and third, whether retroactive application 'could produce substantial inequitable results' in individual cases (citation omitted)." 102 S.Ct. at 2880 (citing *Chevron Oil v. Huson,* 404 U.S. 97, 106–107, 92 S.Ct. 349, 355–356, 30 L.Ed.2d 296 (1971)). Next, the Court found that "in the present case, all of these considerations militate against the retroactive application of our holding today. It is plain that Congress' broad grant of judicial power to non-Art. III bankruptcy judges presents an unprecedented question of interpretation of Art. III. It is equally plain that retroactive application would not further the operation of our holding, and would surely visit substantial injustice and hardship upon those litigants who relied upon the Act's vesting of jurisdiction in the bankruptcy courts." *Id.* The Court's reference to "litigants who relied upon the Act's vesting of jurisdiction in the bankruptcy courts" leaves room for speculation. Did the Court mean parties who had secured judgments or orders by June 28, 1982? Did the Court refer to parties to matters filed by June 28 who had not yet obtained dispositive orders or judgments? Did the Court intend to include debtors and petitioning creditors who filed bankruptcy petitions before June 28 as well as parties to lawsuits, no matter when filed, which might arise within the penumbrae of pre-June 28 bankruptcy cases?[3] A convincing answer to these questions has not yet been given.

After holding "that our decision today shall apply only prospectively," the Court affirmed the judgment of the lower court.

Then, the Court stayed its judgment until October 4, 1982. In the Court's view, a limited stay would "afford Congress an opportunity to reconstitute the bankruptcy courts or adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws." 102 S.Ct. at 2880.

Because the Court stayed its judgment until October 4, its holding on retroactivity is fully applicable to the period between June 28, 1982 and October 4, 1982. And because the Court later extended the stay until December 24, 1982,[4] the Court's holding on retroactivity governs the period between October 4, 1982 and December 24, 1982. In other words, because of the stay until after December 24, 1982, bankruptcy cases and civil proceedings filed before June 28, 1982 stand on equal jurisdictional footing with those filed after June 28, but before the stay expired on December 24.

The Court's stay of its judgment in *Marathon* is a significant key to the meaning of its holding on retroactivity. Logically, the jurisdiction of the bankruptcy courts after December 24 to act in cases and proceedings filed through December 24 is the same as the jurisdiction of the bankruptcy courts would have been after June 28 to act in cases and proceedings filed through June 28 had there been no stay. Thus, the Court's view of what would have occurred after June 28 absent a stay is of prime importance.

According to the Court, absent a stay of its *Marathon* judgment, the interim administration of the bankruptcy laws would have been impaired. 102 S.Ct. at 2880. While it may be that the impairment the Court had in mind was limited to the absence of subject matter jurisdiction to act in bankruptcy cases filed after June 28 and in lawsuits connected with those cases, the Court did not qualify its statement. In any event, if the Court's "prospective only" holding per-

---

**3.** As will be seen below, because of the stay of the *Marathon* judgment until December 24, references here and elsewhere to June 28 are, in effect, equivalent to references to December 24.

**4.** *See United States v. Security Industrial Bank,* —— U.S. ——, —— n. 5, 103 S.Ct. 407, 410 n. 5, 74 L.Ed.2d 235 (1982).

mitted the exercise of Section 241(a) jurisdiction after June 28 in bankruptcy cases filed before June 28 and in connected lawsuits, it would have been unnecessary, at least for those bankruptcy cases and lawsuits, for the Court to stay its judgment; the Court could have entered its judgment on June 28 and in all filed bankruptcy cases and in connected lawsuits, the bankruptcy courts could have continued to exercise Section 241(a) jurisdiction. Thus, the "prospective only" holding may relate only to orders and judgments which had become final when the Court's judgment in *Marathon* went into effect. This inference is supported by the cases cited in *Marathon* footnote 41.

In *Buckley v. Valeo, supra,* the Court held that some of the powers granted by Congress to the Federal Election Commission could not constitutionally be exercised by Commission members not appointed by the President. 424 U.S. at page 142, 96 S.Ct. at page 693, the citation appearing in footnote 41 in *Marathon,* the Court said

It is also our view that the Commission's inability to exercise certain powers because of the method by which its members have been selected should not affect the validity of the Commission's administrative *actions and determinations to this date,* including its administration of those provisions, upheld today, authorizing public financing of federal elections. The *past acts* of the Commission are therefore accorded de facto validity, just as we have recognized should be the case with respect to legislative acts performed by legislators held to have been elected in accordance with an unconstitutional apportionment plan.

*Id.* (emphasis supplied).

If the *Marathon* court meant, by its "prospective only" holding, the same thing said in *Buckley,* "actions and determinations to this date" and "past acts," orders and judgments entered between October 1, 1979 and December 24, 1982, are validated. *Buckley* is not authority for the exercise of jurisdiction after December 24.

In *Chicot County Drainage District v. Baxter State Bank, supra,* a federal district court, acting pursuant to a jurisdictional grant in the 1934 Act of Congress providing for municipal debt readjustments,[5] confirmed a plan of readjustment for the Chicot County Drainage District which affected the rights of bondholders. The order confirming the plan was entered in March of 1936. About two months later, on May 25, 1936, the Supreme Court held that the statute under which the district court had acted was unconstitutional. *Ashton v. Cameron County Water Improvement District,* 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309 (1936).[6]

**5.** Act of May 24, 1934, 48 Stat. 798.

**6.** After the May 25, 1936 ruling there were pending in the circuit courts several appeals from orders entered under the Act *Ashton* held unconstitutional. The Supreme Court did not make its ruling prospective and did not stay its judgment. The circuit courts had no choice but to apply the *Ashton* decision to the cases before them.

In cases where an objection to the constitutionality of the Act had been made before the *Ashton* decision was rendered and the rulings on those objections were on appeal after the *Ashton* decision, the circuit courts followed *Ashton* and required dismissal of the proceedings. *Adams v. City of Sarasota,* 83 F.2d 1005 (5th Cir. June 6, 1936) (The city filed a petition under the Act, certain bondholders intervened in opposition to the petition and argued the unconstitutionality of the Act, and the lower court ruled against the bondholders. The Fifth Circuit said, "On the authority of *Ashton* . . . , the judgment is reversed and the case remanded, with instructions to dismiss the proceeding."); *Schaller v. Board of Supervisors,* 83 F.2d 1016 (8th Cir.1936) (A drainage district filed a petition under the Act, the lower court approved a plan of readjustment, a bondholder moved to dismiss the petition on the ground that the Act was unconstitutional, and the lower court denied the motion. The Eighth Circuit said, "Subsequent to the ruling on the motion to dismiss . . . the Supreme Court of the United States in the case of *C.L. Ashton* . . . has held that section 80 of the Bankruptcy Act as amended (11 U.S.C.A. § 303) was invalid under the Constitution. The holding is directly applicable here and requires us to rule that the motion to dismiss should have been sustained by the trial court."). *Id.* at 1017.

Even in cases on appeal when *Ashton* was decided in which no objection to jurisdiction had been raised in the lower court, at least as far as can be seen from the published opinions, the appellate courts applied *Ashton* to require

After the confirmation order became final, bondholders of the drainage district sued the district in a collateral proceeding to redeem their bonds. In defense, the drainage district pled the res judicata effect of the order of confirmation. The bondholders argued, and the district court and court of appeals held, that the order of confirmation was void because, after its entry, the Supreme Court had declared unconstitutional the statute authorizing the plan's confirmation. The theory of the lower courts was that "the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence no basis for the challenged decree." *Chicot, supra* 308 U.S. at 374, 60 S.Ct. at 318.

The Supreme Court, however, said that "such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications:"

The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects,—with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, *of prior determinations deemed to have finality and acted upon accordingly,* of public policy in the light of the nature both of the statute and of its previous application, demand examination. These questions are among the most difficult of those which have engaged the attention of the courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified.

*Id.* (emphasis supplied). After making these observations, the Court found that with respect to the confirmation order, apart from the question of the effect of the later decision as to constitutionality, all the elements of the defense of res judicata were present.

Next, the Court asked whether the district court, because the statute under which it entered the order of confirmation was later declared unconstitutional, was without jurisdiction to entertain the readjustment proceeding and whether its order was therefore subject to collateral attack. In response, the Court gave the following answer at pages 376 to 377, 60 S.Ct. at pages 319–320, the citations given in footnote 41 of *Marathon:*

We think the argument untenable. The lower federal courts are all courts of limited jurisdiction, that is, with only the jurisdiction which Congress has prescribed. But none the less they are courts with authority, when parties are brought before them in accordance with

---

dismissal of the pending bankruptcy cases. *Covell v. Waterford Irrigation District,* 86 F.2d 22 (9th Cir. Oct. 19, 1936) *cert. denied* 300 U.S. 682, 57 S.Ct. 753, 81 L.Ed. 885 (1937). (An irrigation district filed a petition under the Act, the lower court approved a reorganization plan, and bondholders of the district appealed. The Ninth Circuit Court of Appeals ordered dismissal of the bankruptcy case: "During the pendency of this appeal the Supreme Court has held that the provisions of the Bankruptcy Act relied upon are unconstitutional ... (citing *Ashton*). For that reason the order of the lower court must be reversed, and the case remanded to the District Court for further action consistent with this opinion."). In *Bekins v. Merced Irrigation District,* 89 F.2d 1002 (9th Cir., 1937), explained in *In re Merced Irrigation District,* 25 F.Supp. 981, 986–987 (S.D.Cal.

1939), an irrigation district filed a petition under the Act later held unconstitutional in *Ashton.* The district court confirmed a plan of readjustment and a dissatisfied group of investors appealed. Before the appeal was heard, the Supreme Court decided *Ashton.* The Ninth Circuit Court of Appeals ordered that "a decree be filed and entered reversing the decree of [the] District Court, and remanding the cause with instructions to dismiss the cause ...." 89 F.2d 1002.

These decisions were rendered in appeals from decisions made under the unconstitutional Act. The appeals were pending or perfected after *Ashton. Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), arose under different circumstances. *See* discussion of *Chicot* in text.

the requirements of due process, to determine whether or not they have jurisdiction to entertain the cause and for this purpose to construe and apply the statute under which they are asked to act. Their determinations of such questions, while open to direct review, may not be assailed collaterally.

In the early case of *M'Cormick v. Sullivant,* 10 Wheat. 192 [6 L.Ed. 300], where it was contended that the decree of federal district court did .not show that the parties to the proceedings were citizens of different States and hence that the suit was *coram non judice* and the decree void, this Court said: "But this reason proceeds upon an incorrect view of the character and jurisdiction of the inferior Courts of the United States. They are all of limited jurisdiction; but they are not, on that account, inferior Courts, in the technical sense of those words, whose judgments, taken alone, are to be disregarded. If the jurisdiction be not alleged in the proceedings, their judgments and decrees are erroneous, and may, upon a writ of error, or appeal, be reversed for that cause. But they are not absolute nullities." *Id.,* p. 199. See, also, *Skillern's Executors v. May's Executors,* 6 Cranch 267 [3 L.Ed. 220]; *Des Moines Navigation Co. v. Iowa Homestead Co.,* 123 U.S. 552, 557, 559 [8 S.Ct. 217, 219–220, 31 L.Ed. 202]; *Dowell v. Applegate,* 152 U.S. 327, 340 [14 S.Ct. 611, 616, 38 L.Ed. 463]; *Evers v. Watson,* 156 U.S. 527, 533 [15 S.Ct. 430, 432–433, 39 L.Ed. 520]; *Cutler v. Huston,* 158 U.S. 423, 430, 431 [15 S.Ct. 868, 870–871, 39 L.Ed. 1040]. This rule applies equally to the decrees of the District Court sitting in bankruptcy, that is, purporting to act under a statute of Congress passed in the exercise of the bankruptcy power. The court has the authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, is *res judicata* in a collateral action. *Stoll v. Gottlieb,* 305 U.S. 165, 171, 172 [59 S.Ct. 134, 137–138, 83 L.Ed. 104].

Whatever the contention as to jurisdiction may be, whether it is that the boundaries of a valid statute have been transgressed, or that the statute itself is invalid, the question of jurisdiction is still one for judicial determination. If the contention is one as to validity, the question is to be considered in the light of the standing of the party who seeks to raise the question and of its particular application. In the present instance it is suggested that the situation of petitioner, Chicot County Drainage District, is different from that of the municipal district before the court in the *Ashton* case. Petitioner contends that it is not a political subdivision of the State of Arkansas but an agent of the property owners within the District. See *Drainage District No. 7 of Poinsett County v. Hutchins,* 184 Ark. 521, 42 S.W.2d 996. (footnote omitted). We do not refer to that phase of the case as now determinative but merely as illustrating the sort of question which the District Court might have been called upon to resolve had the validity of the Act of Congress in the present application been raised. As the question of validity was one which had to be determined by a judicial decision, if determined at all, no reason appears .why it should not be regarded as determinable by the District Court like any other question affecting its jurisdiction. There can be no doubt that if the question of the constitutionality of the statute had actually been raised and decided by the District Court in the proceeding to effect a plan of debt readjustment in accordance with the statute, that determination would have been final save as it was open to direct review upon appeal. *Stoll v. Gottlieb, supra.* (footnote omitted)

While some language in *Chicot* might support a broader holding, *Chicot* involved an attack on a final order and its holding rests on that fact. *Chicot* did not preserve proceedings which had not been disposed of by a final order. Thus, *Chicot* stands only for the proposition that orders which have become final prior to a decision of the Supreme Court invalidating the jurisdictional provisions under which the orders were entered are not open to collateral attack.

Like *Buckley, Chicot* confirms the validity of orders and judgments entered under the authority of Section 241(a) between October 1, 1979 and December 24, 1982 which have become final. *Chicot* is not authority for the proposition that after December 24, 1982, bankruptcy courts possess any vestige of subject matter jurisdiction.

■■■ In *Insurance Corp. v. Compagnie des Bauxites, supra,* the Court held that a federal district court, as a sanction for disobedience of a discovery order seeking facts related to personal jurisdiction, could deem those facts established. In making its ruling, the Court distinguished subject matter jurisdiction from personal jurisdiction, and in so doing stressed the source and import of the subject matter jurisdiction of federal courts:

> The validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties. (citations omitted).
>
> · *       *       *       *       *       *
>
> Federal courts are courts of limited jurisdiction. The character of the controversies over which federal judicial authority may extend are delineated in Article III, § 2, cl. 1. Jurisdiction of the lower federal courts is further limited to those subjects within a statutory grant of jurisdiction. Again, this reflects the constitutional source of federal judicial power. Apart from this Court, that power only exists "in such inferior Courts as the Congress may from time to time ordain and establish." Art. III, § 1.
>
> Subject matter jurisdiction, then, is an Article III as well as a statutory requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign. Certain legal consequences directly follow from this. For example, no action of the parties can confer subject matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant, (citation

omitted), principles of estoppel do not apply, (citation omitted), and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings.

> Similarly, a court, including an appellate court, will raise lack of subject matter jurisdiction on its own motion. "[T]he rule, springing from the nature and limits of the judicial power of the United States is inflexible and without exception, which requires this court, of its own motion, to deny its jurisdiction, and, in the exercise of its appellate power, that of all other courts of the United States, in all cases where such jurisdiction does not affirmatively appear in the record." *Mansfield, Coldwater & Lake Michigan Ry. Co. v. Swan,* 111 U.S. 379, 382 [4 S.Ct. 510, 511, 28 L.Ed. 462] (1884).

102 S.Ct. at 2104. This paragraph is followed by footnote 9, cited in footnote 41 in *Marathon:*

> A party that has had an opportunity to litigate the question of subject matter jurisdiction may not, however, reopen that question in a collateral attack upon an adverse judgment. It has long been the rule that principles of res judicata apply to jurisdictional determinations— both subject matter and personal. *See Chicot County Drainage Dist. v. Bank,* 308 U.S. 371 [60 S.Ct. 317, 84 L.Ed. 329] (1940); *Stoll v. Gottlieb,* 305 U.S. 165 [59 S.Ct. 134, 83 L.Ed. 104] (1938).

Footnote 9 adds nothing to *Marathon* except an explanation of *Chicot. Insurance Corp.,* as a restatement of the law of subject matter jurisdiction, however, shows that reliance on consent as the sole basis for jurisdiction, or on estoppel, or on failure to object, is improper.[7] The only legitimate source of subject matter jurisdiction in the lower federal courts is an express statutory grant from Congress. It may not be derived from the Executive, from the Judiciary, or from litigants. If a federal court

---

**7.** Under former law, the consent of a defendant sued by a trustee in bankruptcy was sufficient to confer federal subject matter jurisdiction, but only because a federal statute so provided.

Bankruptcy Act of 1898, § 23b, former 11 U.S.C. § 46b. That statute has been repealed. Pub.L. No. 95–598, § 401(a), 92 Stat. 2682 (1978).

finds itself without jurisdiction, it must so declare.

Taken together, the authorities cited in *Marathon* footnote 41 legitimize only those orders and judgments of bankruptcy courts entered pursuant to Section 241(a)'s jurisdictional grant which have become final, to which the principles of res judicata apply, and which were entered before December 24, 1982. In *Marathon* and in the cases cited in footnote 41, jurisdiction to act after December 24, 1982, does not "affirmatively appear" and for that reason must be denied.[8]

**8.** "[T]he rule ... is inflexible and without exception, which requires this court ... to deny jurisdiction ... in all cases where such jurisdiction does not affirmatively appear in the record." *Mansfield, Coldwater & Lake Michigan Ry. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884), cited in *Insurance Corp., supra* 102 S.Ct. at 2104.

*Accord, Still v. First Bank of Newton (In re Jorges Carpet Mills, Inc.),* 27 B.R. 333 (Bkrtcy.E.D.Tenn.1983) ("On [December 25, 1982] it became the law of the United States that the bankruptcy courts as bankruptcy courts do not have jurisdiction to do anything in a case pending under the 1978 Act. The argument that the ruling in *Northern* [*Northern Pipeline Construction Company v. Marathon Pipe Line Company,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598] applies only to cases filed after December 24, 1982, is unconvincing ... In the *Northern* case, the Supreme Court said that its decision would be prospective only. In other words, the court held that its decision would not affect orders that were already final ... Bankruptcy court orders that became final between the date of the *Northern* decision and the date it took effect were not affected by the lack of jurisdiction because the *Northern* order did not apply retroactively ... Nothing in *Northern* reasonably leads to the conclusion that it affects jurisdiction only in cases and proceedings filed after it took effect ... The Supreme Court delayed the effect of *Northern* to preserve jurisdiction not just for cases and proceedings not yet filed but also for cases and proceedings already pending ... Furthermore, the cases cited by the Supreme Court dealt with the effect of a decision like *Northern* on orders that were final or actions that were taken without challenge before the decision ... This court must conclude that beginning on December 24, 1982, the bankruptcy courts as bankruptcy courts ceased to have jurisdiction to make any orders in cases or proceedings under the 1978 Act.").

In *Walter E. Heller and Co. v. Matlock Trailer Corp., (In re Matlock Trailer Corp.),* Bk. No. 382–02778, Adv. No. 382–0755, slip op. (M.D. Tenn. Jan. 26, 1983), the bankruptcy court for the Middle District of Tennessee ruled that it retained "§ 241(a) jurisdiction to adjudicate all bankruptcy cases filed prior to December 24, 1982, including all adversary proceedings and related matters to those cases, whenever filed." *Id.* at 2.

In reaching this conclusion, the court followed three lines of reasoning. First, citing Supreme Court decisions on the retroactive effect of rulings on criminal procedure, the court noted that "in the criminal area, the Court has often allowed cases to continue despite constitutional questions and infirmities concerning underlying issues ... on the theory that justice is better served when cases begun in reliance on a particular constitutional interpretation are allowed to continue to completion." *Id.* at 10. Second, the court reasoned that any holding not permitting the continued exercise of jurisdiction in filed bankruptcy cases would not give "meaning and effect to the Court's concern for fairness, equity and the prevention of hardship which motivated their decision to apply [*Marathon*] prospectively," and would "create an inequitable travesty. Litigants would be treated differently based solely on the date a particular proceeding was completed." *Id.* at 11. The court found nothing in *Marathon* "to indicate that the Court intended to promote a 'race to judgment' so that parties who received judgments prior to December 24 would be protected and those whose cases could not be accommodated by the court's schedule or were taken under advisement would be prejudiced." *Id.* Third, the court found that, given the Supreme Court's concern for injustice and hardship, a ruling denying jurisdiction in cases filed before December 24 and connected proceedings would be inconsistent, for "the administration of all bankruptcy cases would come to a halt ..., [bankruptcy would be reduced] to a meaningless concept ..., [and] bankruptcy cases pending before this court would disappear with consequent unimaginable waste and prejudice to the parties involved." *Id.* at 13.

The Supreme Court, one week before its decision in *Marathon,* concluded that "retroactivity must be rethought," and went on to analyze the issues involved in giving retroactive effect to one of its criminal procedure decisions. *United States v. Johnson,* —— U.S. ——, 102 S.Ct. 2579, 2586, 73 L.Ed.2d 202 (1982). *Johnson* specifically notes the distinction between civil and criminal retroactivity: "all questions of civil retroactivity continue to be governed by the standard enunciated in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–107, 92 S.Ct. 349, 355–356, 30 L.Ed.2d 296 (1971)." 102 S.Ct. at 2594–2595. Significantly, *Marathon* did not cite *Johnson* or any other opinion on the retroactivity of criminal procedure decisions. Because " 'prospective' has no single meaning,"

THIS COURT DOES NOT RECEIVE SUBJECT MATTER JURISDICTION OF THIS ACTION FROM 11 U.S.C. § 105(a) AND SECTION 404(a) OF THE BANKRUPTCY REFORM ACT

■ The trustee argues that the bankruptcy courts derive subject matter jurisdiction over actions arising under title 11, such as this action, from the combination of two provisions of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat. 2549: Section 404(a) and 11 U.S.C. § 105(a).[9] Section 404(a) of the Bankruptcy Reform Act provides that

> The courts of bankruptcy, as defined under section 1(10) of the Bankruptcy Act,[10] created under section 2a of the Bankruptcy Act,[11] and existing on September 30, 1979, shall continue through March 31, 1984, to be the courts of bankruptcy for the purposes of this Act and the amend-ments made by this Act. Each of the courts of bankruptcy so continued shall constitute a separate department of the district court that is such court of bankruptcy under the Bankruptcy Act.

11 U.S.C. § 105(a) provides that

> The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

Under Section 404(b) of the Bankruptcy Reform Act, bankruptcy judges serve in the courts of bankruptcy continued under Section 404(a). Pub.L. No. 95–598, § 404(b), 92 Stat. 2683. The existence of the courts of bankruptcy, which constitute separate departments of the United States district courts, is not affected by *Marathon,* which invalidates the jurisdiction granted in Section 241(a), but does not dissolve the courts of bankruptcy. From these premises, the

---

*Matlock, supra* at 6, *Marathon*'s "prospective only" holding is best measured by the guideposts found in *Marathon* itself, not by those found elsewhere.

Arguments based on the resulting inequities if filed bankruptcy cases cannot be continued may stem more from considerations of expedience than from analysis of *Marathon* and the authorities cited in footnote 41. To the extent that expedience, practicality, and the like are proper measures of the prospective effect of *Marathon,* they may recommend denying jurisdiction to act after December 24, 1982. If there is room for error in interpreting the prospective effect of *Marathon,* it may be worse to err by finding jurisdiction to act after December 24 than to err by denying jurisdiction. If the Court holds in some future opinion that its "prospective only" holding was limited to the validation of past acts, the post-December 24 exercise of nonexistent jurisdiction will be more damaging to those who rely on orders and judgments of the bankruptcy courts than the postponement of action pending curative legislation or further guidance from the Court. While it may be argued that the Court did not mean to cut off the exercise of jurisdiction in pending cases because otherwise great hardship would result, this argument is not supported by the authorities cited in *Marathon* footnote 41. Moreover, as noted in the text, this argument makes the Court's imposition of a stay of its judgment, at least with respect to cases filed before June 28, meaningless.

**9.** *The trustee does not argue that after Marathon,* bankruptcy jurisdiction reverts to its pre-Reform Act status. Others have theorized that Section 404(a)'s continuance of the court struc-ture existing on September 30, 1979 during the transition period between October 1, 1979 and April 1, 1984, coupled with *Marathon,* revive the jurisdictional provisions of former law.

Section 401(a) of the Reform Act, however, repealed all of the jurisdictional grants found in former law, permitting their use only in cases commenced under former law. Section 404(a), entitled "Courts During Transition," retained the courts, not their jurisdiction. Section 405, entitled "Jurisdiction and Procedure During Transition," provides that Section 241(a) is the sole source of jurisdiction over bankruptcy matters for the courts continued by Section 404(a).

**10.** Section 1(10) of the Bankruptcy Act supplied the definition of courts of bankruptcy: " 'courts of bankruptcy' shall include the United States district courts and the district courts of the Territories and possessions to which this Act is or may hereafter be applicable."

**11.** Section 2a of the Bankruptcy Act provided for the creation of courts of bankruptcy and their jurisdiction: "The courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are hereby invested, within their respective territorial limits as now established or as they may be hereafter changed, with such jurisdiction at law and in equity *as will* enable *them* to exercise original jurisdiction in proceedings under this Act, in vacation, in chambers, and during their respective terms, as they are now or may be hereafter held, to—[then follows a list of actions which may be taken]."

trustee concludes that the courts of bankruptcy continued under Section 404(a) derive subject matter jurisdiction from 11 U.S.C. § 105.

Disregarding the problems of statutory construction raised by the trustee's argument,[12] the argument fails because 11 U.S.C. § 105 does not confer subject matter jurisdiction. Instead, it is an investiture of broad powers to act after subject matter jurisdiction is established.

Section 105 of the Bankruptcy Reform Act is identical to proposals made in H.R. 8200, 95th Cong., 1st Sess. (Sept. 8, 1977) and S. 2266, 95th Cong., 2d Sess. (May 17, 1978). The House and Senate reports on those bills clarify the function of Section 105. House Report 95–595, 95th Cong., 1st Sess. 316 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6273, explained that

> Section 105 is derived from section 2a(15) of present law,[13] with two changes. First, the limitations on the power of a bankruptcy judge (powers that were reserved to the district judge) are removed as inconsistent with the separation of the two courts and the increased powers and jurisdiction of the new court .... Second, the bankruptcy judge is prohibited from appointing a receiver in a case under title 11 under any circumstances.[14]

> .    .    .    .    .

> Section 105 is similar in effect to the All Writs Statute, 28 U.S.C. 1651, under

which the new bankruptcy courts are brought by an amendment to 28 U.S.C. 451. H.R. 8200 § 213. The section is repeated here for the sake of continuity from current law and ease of reference, and to cover any powers traditionally exercised by a bankruptcy court that are not encompassed by the All Writs Statute.

Senate Report 95–989, 95th Cong., 2d Sess. 29 (1978), U.S.Code Cong. & Admin.News 1978, p. 5815, gave a briefer but consistent interpretation:

> Section 105 is derived from section 2a(15) of present law, with two changes. First, the limitation on the power of a bankruptcy judge (the power to enjoin a court being reserved to the district judge) is removed as inconsistent with the increased powers and jurisdiction of the new bankruptcy court. Second, the bankruptcy judge is prohibited from appointing a receiver in a case under title 11 under any circumstances.

These reports emphasize Section 105 as a source of powers commensurate with the expanded jurisdiction of the bankruptcy courts.

Section 105 is derived from Section 2(a)(15) of the former Bankruptcy Act. "The use of section 2(a)(15) of the Act," according to one commentator, "[was] not to expand the court's jurisdiction, but to give it the right to issue orders in aid of the

---

**12.** Arguments can be made on both sides of the question of Section 105's availability during the transition period between October 1, 1979 and April 1, 1984. Section 105(a) "became effective on October 1, 1979, under sec. 402(a) of Public Law No. 95–598, and since the bankruptcy court created by 28 U.S.C. § 151(a) does not come into existence under sec. 402(b) of Public Law No. 95–598 until April 1, 1984, there appears to be no statutory recognition of the power of the court of bankruptcy continued through the transitional period by Public Law No. 95–598, sec. 404(a), to 'issue any necessary order, process, or judgment.' Subsections (a)(1) and (b) of sec. 405, however, authorize the bankruptcy judges of the continued court of bankruptcy to exercise the jurisdiction and powers of the bankruptcy courts created by 28 U.S.C. § 151 and those powers surely include the power granted by 11 U.S.C. § 151(a)." Kennedy, "The Bankruptcy Court Under the

New Bankruptcy Law: Its Structure, Jurisdiction, Venue, and Procedure," 11 St. Mary's L.J. 251, 279 n. 110 (1979).

**13.** Section 2a(15) provided that the courts of bankruptcy were invested with such jurisdiction as would enable them to exercise original jurisdiction in proceedings under the Bankruptcy Act to "make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this Act: *Provided, however,* that an injunction to restrain a court may be issued by the judge only."

**14.** Section 105(b) provides that "notwithstanding subsection (a) of this section, a bankruptcy court may not appoint a receiver in a case under this title."

**418**

jurisdiction—subject to legal principles—which it already had." Levine, "An Enhanced Conception of the Bankruptcy Judge: From Case Administrator to Unbiased Adjudicator," 84 W.Va.L.Rev. 637, 653 (1982).

Section 105 is "similar in effect" to 28 U.S.C. § 1651.[15] Section 1651 "does not operate to confer jurisdiction ... No new grant of judicial power is contemplated by the statute; § 1651(a) is rather only an incident of jurisdiction. An order may issue pursuant to this statute to preserve jurisdiction already lawfully acquired, but a court may not, by said order, acquire jurisdiction over an individual or property not otherwise subject to its jurisdiction." *Commercial Security Bank v. Walker Bank & Trust Co.*, 456 F.2d 1352, 1355 (10th Cir. 1972) (footnotes omitted).

Although Section 105(a) is broader than Section 1651(a) because Section 105(a) covers "any powers traditionally exercised by a bankruptcy court that are not encompassed by the All Writs Statute," House Report, *supra,* there is no hint in the legislative history or in the Reform Act itself that Section 105(a) is a source of subject matter jurisdiction. Instead, Section 105(a) was placed in the Reform Act "for the sake of continuity from current law," "for ease of reference," and to broaden the powers granted by Section 1651(a). Subject matter jurisdiction was provided for in Section 1471 of the Bankruptcy Reform Act of 1978.

Section 105(a) endows the bankruptcy courts with a broad range of powers they may exercise, within the bounds of necessity and propriety, to carry out the provisions of bankruptcy law. Section 1471 identifies the matters respecting which the bankruptcy courts, applying those and other powers, may issue binding decrees. Without Section 1471, or some other source of subject matter jurisdiction which would permit cases or proceedings to come before the bankruptcy courts for disposition, those powers granted by Section 105(a) are useless.

## THE UNITED STATES DISTRICT COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OF THIS ACTION UNDER 28 U.S.C. § 1331

Section 1331 of title 28, United States Code, provides that

> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

The trustee maintains that because his complaint alleges causes of action under title 11, Sections 544(b) and 548(a)(2), subject matter jurisdiction lies in the United States district court for this district under Section 1331 and, under the emergency rule adopted by the district court, the trial of his complaint has properly been referred to this court.[16] Section 1331, however, does not vest jurisdiction of this action in the district court.[17]

---

**15.** 28 U.S.C. § 1651 provides that "(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law. (b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction."

**16.** The trustee does not argue that the district court derives jurisdiction of this action from 28 U.S.C. § 1334. In light of the analysis in *Color Craft Press, supra* note 2 at 409, Section 1334 is not a valid source of subject matter jurisdiction of this action. *But see In re Northland Partners,* 26 B.R. 860 (E.D.Mich.1983) (District Judge Demascio) ("Congress carefully kept in effect, until 1984, [28 U.S.C. § 1334, which gives] the federal district

courts 'original jurisdiction, exclusive of the courts of the states, of all matters and proceedings in bankruptcy.'"); *see also Blue v. Mathena,* 259 F.Supp. 926, 927 (1966) (former law—although headnotes suggest the court relied on Section 1334, the court's language and rationale show it relied instead on former 11 U.S.C. § 107(e)). *See also In re Jorges Carpet Mills, Inc., supra* note 8 (leaving open the question of Section 1334 as a source of bankruptcy jurisdiction post-*Marathon*).

**17.** Thus, the issue of the validity of the district court's rule is not reached. If the district court had jurisdiction over this action, the referral of this action to this court under the emergency rule would raise difficult questions. For example, was there authority to adopt the rule? Does the rule conflict with *Marathon?* Does

**1.** *28 U.S.C. § 1331 was not intended to grant subject matter jurisdiction of actions arising under the bankruptcy laws of the United States.*

■ The lower federal courts are courts of limited, not general, jurisdiction. They have no subject matter jurisdiction except that given them by Congress. Because they are courts of limited jurisdiction, it has long been the law in the federal courts that "the fair presumption is (not as with regard to a court of general jurisdiction, that a cause is within its jurisdiction unless the contrary appears, but rather) that a cause is without jurisdiction till the contrary appears." *Turner v. Bank of North America,* 4 U.S. (4 Dall.) 8, 11, 1 L.Ed. 718 (1799). Thus, "there are no presumptions in favor of the jurisdiction of the courts of the United States." *Ex parte Smith,* 94 U.S. 455, 456, 24 L.Ed. 165 (1877). And, therefore, when the inquiry involves the jurisdiction of a federal court, "the presumption in every stage of a cause [is] that it is without the jurisdiction of a court of the United States." *Lehigh Mining & Manufacturing Co. v. Kelly,* 160 U.S. 327, 337, 16 S.Ct. 307, 311, 40 L.Ed. 444 (1895).

■ Given this "protective wall built around federal subject matter jurisdiction," [18] two principles must not be forgotten in interpreting 28 U.S.C. § 1331. First, although Section 1331 provides a broad jurisdictional grant to the federal courts,[19] "with rare exception, the courts have not in fact seen fit to accord to the statutory language the sweep of its constitutional

ancestor [Article III of the Constitution of the United States]." [20] The phrase "arising under ... the Laws of the United States" in Article III and the identical phrase in 28 U.S.C. § 1331 are not of the same scope.

[A] different approach is proper in interpreting a jurisdictional statute than that taken in interpreting the constitutional provisions of Article III ... A broad and liberal construction of Article III in favor of federal judicial power is proper, for the Constitution is permanent in nature, normally has a broader purpose than a statute, and its language should have a living flexibility. A statute granting jurisdiction to a federal court is something quite different. Here Congress is dealing with courts of limited jurisdiction. While the statute should receive a fair interpretation, and at times a broad construction, quite generally it is proper to resolve any ambiguity or uncertainty by construing the statute against federal jurisdiction ... Mistake, if any, can be rectified by Congress, if it sees fit to do so.

1 Moore's Federal Practice ¶ 0.60 [2.—3], at 618 (1982).

■ Because Section 1331 is not as broad as its Constitutional counterpart,[21] authority for the proposition that actions arising under bankruptcy law are within the scope of Article III is not necessarily authority for the proposition that they are within the scope of Section 1331. Thus, descriptions of the breadth of Article III should not be

the rule conflict with those provisions of the Bankruptcy Reform Act not invalidated by *Marathon?*

**18.** 13 Wright, Miller & Cooper, Federal Practice & Procedure § 3522, at 55 (1975).

**19.** *Powell v. McCormack,* 395 U.S. 486, 515, 89 S.Ct. 1944, 1960–1961, 23 L.Ed.2d 491 (1969) (citing Mishkin, "The Federal 'Question' in the District Courts," 53 Colum.L.Rev. 157, 160 (1953)).

**20.** Mishkin, *supra* note 19.

**21.** By contrast, 28 U.S.C. § 1471 may be as broad as Article III permits. "Congress intended that the only limits on Federal court juris-

diction in bankruptcy matters should be those established by the Constitution. The [Bankruptcy Reform Act's] grant of subject matter jurisdiction confers on the district courts 'original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.' The [Bankruptcy Reform Act's] legislative history leaves no doubt that this open-ended language should receive the most expansive reading possible. (footnotes omitted)." Comment, "Bankruptcy and the Limits of Federal Jurisdiction," 95 Harv.L.Rev. 703, 706 (1982) (citing S.Rep. No. 95–989, 95th Cong., 2d Sess. 153–154 (1978) and H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 445 (1977)).

taken as definitions of the scope of Section 1331. For example,

> Bankruptcy matters, arising as they do under the article I, section 8 power of Congress to provide uniform bankruptcy rules, are clearly "federal question" cases. Matters "related to" bankruptcy proceedings, even those resting on state law, can also be considered to "arise under" federal law. Congress has made a policy decision that to implement effectively its duty to impose uniformity on bankruptcy cases, all issues, i.e., all proceedings, that might affect the estate should be resolved in one federal forum. Plenary bankruptcy proceedings therefore flow directly from a legislative power, and they are thus "federal question" article III cases.

Finley, "Article III Limits on Article I Courts: The Constitutionality of the Bankruptcy Court," 1982 Ann.Surv.Bankr.L. 1, 7.

A second rule for interpreting Section 1331 is that Congress' grant of federal question jurisdiction should not be read to include actions Congress did not intend to include. The Supreme Court's opinion in *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 769 (1959), illustrates this rule. There, the Court held that Section 1331 did not grant jurisdiction of claims based on the general maritime law. Before inquiring whether the federal question statute permitted maritime claims "rooted in federal law to be brought on the law side of the lower federal courts," *Id.* at 359–360, 79 S.Ct. at 473, the Court said

> Abstractly stated, the problem is the ordinary task of a court to apply the words of a statute according to their proper construction. But "proper construction" is not satisfied by taking the words as if they were self-contained phrases. So considered, the words do not yield the meaning of the statute. The words we have to construe are not only words with a history. They express an enactment that is part of a serial, and a serial that must be related to Article III of the

Constitution, the watershed of all judiciary legislation, and to the enactments which have derived from that Article. Moreover, Article III itself has its sources in history. These give content and meaning to its pithy phrases. Rationally construed, the Act of 1875 [the first lasting statute giving general federal question jurisdiction to a lower federal court] must be considered part of an organic growth—part of the evolutionary process of judiciary legislation that began September 24, 1789, and projects into the future.

*Id.* at 360, 79 S.Ct. at 473–474. Section 1331 is understood only in light of its history and purposes. "If the history of the interpretation of judiciary legislation teaches anything," the Court observed, "it teaches the duty to reject treating such statutes as a wooden set of self-sufficient words . . . . The Act of 1875 is broadly phrased, but it has been continuously construed and limited in the light of the history that produced it, the demands of reason and coherence, and the dictates of sound judicial policy which have emerged from the Act's function as a provision in the mosaic of federal judiciary legislation. It is a statute, not a Constitution, we are expounding." 358 U.S. at 379, 79 S.Ct. at 484. Even though an action fits the words of Section 1331, if it is one Congress did not intend to include, proper interpretation of Section 1331 demands its exclusion. "The policy of the statute calls for its strict construction." *Healy v. Ratta*, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934).

The federal district courts established by the Judiciary Act of 1789 were "vested with original jurisdiction over cases in admiralty and some lesser civil and criminal matters." 7B Moore's Federal Practice ¶ [0—3], at JC–6 (1982). At that time, there was no federal bankruptcy law.

Later, under the short-lived Bankruptcy Acts of 1800 [22] and 1841,[23] the district courts became courts of bankruptcy, vested with

---

**22.** Act of Apr. 4, 1800, 2 Stat. 19; repealed Dec. 19, 1803, 2 Stat. 248.

**23.** Act of Aug. 19, 1841, 5 Stat. 440; repealed Mar. 3, 1843, 5 Stat. 614.

jurisdiction of matters arising under the federal bankruptcy statute.[24] In neither Act was reliance placed on the jurisdictional provisions of the Judiciary Act then existent. During the life of those Acts, except for a brief period between 1801 and 1802 when the Act of Feb. 13, 1801[25] was in force, the federal courts had no general federal question jurisdiction. The Act of Feb. 13, 1801, granted federal question jurisdiction to the old circuit courts, in Section 11 of that Act, as follows: "[T]he . . . circuit courts respectively shall have cognizance . . . of all cases in law or equity, arising under the constitution and laws of the United States." But this jurisdictional grant did not encompass bankruptcy matters. Section 12 of the same Act, provided that "the said circuit courts respectively shall have cognizance concurrently with the district courts, of all cases which shall arise, within their respective circuits, under the act to establish an uniform system of bankruptcy throughout the United States." Federal question jurisdiction and jurisdiction over cases arising under the bankruptcy law were unconnected.

When the Bankruptcy Act of 1867[26] became law, the lower federal courts still had no federal question jurisdiction. Jurisdiction of actions arising under bankruptcy law, including actions to avoid liens and fraudulent or preferential transfers, was vested concurrently in the federal circuit and district courts by specific provisions in the bankruptcy statute.

In 1875, while the Bankruptcy Act of 1867 was still in place, Congress enacted the Judiciary Act of 1875,[27] which gave the old circuit courts of the United States jurisdiction of "all suits of a civil nature at common law or in equity, . . . arising under the Constitution or laws of the United States." The jurisdictional provisions of the Bankruptcy Act of 1867 were not mentioned. The Court in *Romero* described the purpose of the Judiciary Act of 1875 as follows: "the far-reaching extension of national power resulting from the victory of the North, and the concomitant utilization of federal courts for the vindication of that power in the Reconstruction Era, naturally led to enlarged jurisdiction of the federal courts over federal rights." *Romero,* 358 U.S. *supra* at 368, 79 S.Ct. at 478.[28] The aim of the Judiciary Act of 1875 was "to provide a forum for the vindication of new federally created rights," *Id.,* not to duplicate the existing jurisdictional provisions of the bankruptcy law. The Act of 1875, applying by analogy the Supreme Court's analysis of its coverage of maritime claims, "was designed to give a new content of jurisdiction to the federal courts, not to reaffirm one long-established smoothly functioning" within the confines of the Bankruptcy Act of 1867. *Id.* Applying the Court's language further in these analogous circumstances, "we have uncovered no basis for finding the additional design of changing the method by which federal courts had administered admiralty [bankruptcy] law from the beginning. The federal admiralty [bankruptcy] courts had been completely adequate to the task of protecting maritime [bankruptcy] rights rooted in federal law." *Id.* at 368–369, 79 S.Ct. at 478. The relationship between federal question jurisdic-

24. The Act of 1841, *supra* n. 23, § 6, expressly granted jurisdiction of "all matters and proceedings in bankruptcy arising under this act," and "all cases and controversies in bankruptcy." The Act of 1800, although it had no express jurisdictional provision, "appears to have contemplated that certain specific proceedings and functions (e.g., conducting meetings of creditors, examination of the bankrupt, sending notices, making distributions), would be performed by the commissioners [whose appointment was provided for in the Act], under the supervision of the federal district judge." Reed, Sagar, and Granoff, "Subject Matter Jurisdiction, Abstention and Removal Under the New Federal Bankruptcy Law," 56 Am Bankr. L.J. 121, 125 n. 6 (1982).

25. Act of Feb. 13, 1801, 2 Stat. 89; repealed, Mar. 8, 1802, 2 Stat. 132.

26. Act of Mar. 2, 1867, 14 Stat. 517; repealed, Act of June 7, 1878, 20 Stat. 99.

27. Act of Mar. 3, 1875, 18 Stat. 470.

28. *See* Frankfurter and Landis, The Business of the Supreme Court 65 (1928).

tion and bankruptcy jurisdiction was one of separation, not intersection.

The Bankruptcy Act of 1867 was repealed in 1878, see note 26, supra. When Congress next enacted a bankruptcy law, in 1898,[29] the federal question statute was still in the Judicial Code. If the federal question statute was intended to include bankruptcy jurisdiction, another provision for jurisdiction of actions arising under the new bankruptcy law would have been unnecessary. But Sections 2 and 23 of the Bankruptcy Act of 1898 made specific grants of subject matter jurisdiction to the district and circuit courts. Congress placed no reliance on federal question jurisdiction.

In 1903 and in 1910, in response to a decision of the Supreme Court holding that the district courts, sitting as courts of bankruptcy, lacked subject matter jurisdiction of actions by trustees in bankruptcy to avoid liens, fraudulent conveyances, and preferential transfers,[30] Congress granted concurrent jurisdiction of those actions to the state courts and the federal district courts.[31] As a result of these amendments to the Bankruptcy Act of 1898, the bankruptcy statute specifically provided for subject matter jurisdiction of actions to enforce the avoiding powers of the trustee in bankruptcy. In 1911, Congress revised the federal question statute by abolishing the old circuit courts and by transferring all of their jurisdiction, including federal question jurisdiction, to the federal district courts.[32] If the federal question jurisdiction then vested in the district courts included jurisdiction of actions arising under the bankruptcy laws, such as actions to avoid liens, preferences, or fraudulent transfers, no further amendments to the bankruptcy law for such actions would have been necessary. But in 1926, when Congress amended Section 23b of the Bankruptcy Act of 1898 to substitute the words "district courts" for the words

"circuit courts,"[33] Congress specifically lodged jurisdiction of actions to set aside liens or preferential or fraudulent transfers in the federal district courts. Again, jurisdiction of actions arising under bankruptcy law was distinct from federal question jurisdiction.

Over the years, this disjunction continued. The bankruptcy law gave jurisdiction of actions arising under bankruptcy law, independently of the federal question jurisdiction vested in the district courts. Congress never invoked the general federal question jurisdiction of the federal district courts as a source of jurisdiction of actions arising under bankruptcy law. In Romero, supra, the Court concluded,

> It is ... significant that in the entire history of federal maritime legislation, whether before the passage of the Act of 1875 ... or after ..., Congress has not once left the availability of a trial on the law side [of the district courts] to inference. It has made specific provision. It is difficult to accept that in 1875 ... a most far reaching change was made subterraneously.

358 U.S. at 371, 79 S.Ct. at 479. The historical separation of the federal question statute from the jurisdictional grants in the successive bankruptcy laws forcefully advocates the same conclusion here. Neither Section 1331 nor any of its predecessors was designed to grant subject matter jurisdiction of actions arising under federal bankruptcy law.

Additional support for this conclusion is found in the amount in controversy requirement which, until 1980, limited federal question jurisdiction. The required amount in controversy began at five hundred dollars in 1875 and was raised to two thousand dollars in 1887, to three thousand dollars in

29. Act of July 1, 1898, 30 Stat. 544.

30. *Bardes v. First National Bank,* 178 U.S. 524, 20 S.Ct. 1000, 44 L.Ed. 1175 (1900).

31. Act of Feb. 5, 1903, 32 Stat. 797, 798, 800, c. 487, § 8; Act of June 25, 1910, 36 Stat. 838, 840.

32. Act of March 3, 1911, 36 Stat. 1087.

33. Act of May 27, 1926, 44 Stat. 662. In 1911,

1911, and to ten thousand dollars in 1958.[34] Actions arising under bankruptcy law have never been conditioned on a minimum amount in controversy.

Moreover, federal question jurisdiction, even if meant to cover actions arising under bankruptcy law, may not cover actions arising under bankruptcy laws which incorporate state law as the determinant of the result. In *Shoshone Mining Co. v. Rutter,* 177 U.S. 505, 20 S.Ct. 726, 44 L.Ed. 864 (1900), a federal statute provided that "adverse suits" involving rights to federally owned mining lands, even though such suits were expressly authorized by federal law, did not present federal questions because the federal law authorizing them provided that the outcome of the actions would be determined by the laws of the territory or state in which the land was located.[35] Relying on *Shoshone,* it may be argued that actions by trustees in bankruptcy under Section 544(b), for example, which permits the trustee to "avoid any transfer . . . that is voidable under applicable law . . . ," do not present federal questions because although actions under Section 544(b) are authorized by federal law, the trustee's rights "may not involve any question under the Constitution or laws of the United States, but simply a determination of local rules and customs, or state statutes." *Shoshone, supra* at 508, 20 S.Ct. at 727.[36] "A statute," such as Section 544(b), "authorizing an action to establish a right is very different from one which creates a right to be established. An action brought under the one may involve no controversy as to the scope and effect of the statute, while in the other case it necessarily involves such a controversy, for the thing to be decided is the extent of the right given by the statute." *Id.* at 510, 20 S.Ct. at 728.

For these reasons, neither 28 U.S.C. § 1331 nor any of its statutory ancestors was intended to grant subject matter jurisdiction over actions arising under the bankruptcy laws of the United States and correct construction of Section 1331 requires its elimination from the possible sources of subject matter jurisdiction over this action.[37]

2. *If 28 U.S.C. § 1331 was intended to grant subject matter jurisdiction of actions arising under the bankruptcy laws of the United States, the continued existence of Section 1331 as an independent grant of subject matter jurisdiction of actions arising under the bankruptcy laws is inconsistent with the Bankruptcy Reform Act of 1978.*

Assuming that 28 U.S.C. § 1331 granted subject matter jurisdiction of actions arising under the bankruptcy laws of the United States before the enactment of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat. 2549, the continued operation of Section 1331 as a grant of subject

the circuit courts ceased to exist and the district courts took their place. *See* note 32.

**34.** *See* Act of Mar. 3, 1875, 18 Stat. 470; Act of Mar. 3, 1887, 24 Stat. 552; Act of Mar. 3, 1911, 36 Stat. 1091; Act of July 25, 1958, 72 Stat. 415.

**35.** For a discussion of the *Shoshone* case, *see* Mishkin, *supra* note 19, at 161; 13 Wright & Miller, *supra* note 18 § 3563, at 418–419.

**36.** A cause of action is not one arising under the laws of the United States within the meaning of the federal question statute simply because it is asserted by a trustee in bankruptcy. *Bardes v. First National Bank,* 178 U.S. 524, 536, 20 S.Ct. 1000, 1005, 44 L.Ed. 1175 (1900); *Spencer v. Duplan Silk Co.,* 191 U.S. 526, 531,

24 S.Ct. 174, 176, 48 L.Ed. 287 (1903); *Lovell v. Newman,* 227 U.S. 412, 421, 33 S.Ct. 375, 378, 57 L.Ed. 577 (1913); *Newland v. Edgar,* 362 F.2d 911, 913 (9th Cir.1966).

**37.** *Compare In re Conley,* 26 B.R. 885, 897 (Bkrtcy.M.D.Tenn.1983) ("[T]he district courts do not possess bankruptcy jurisdiction as a consequence of their federal question jurisdiction."); *contra, Braniff Airways, Inc. v. Civil Aeronautics Board (In re Braniff Airways, Inc.),* 27 B.R. 231, 238 n. 17 (D.C.N.D.Tex.1983) ("Arguably, any suit to lift the stay is a federal question and cognizable under 28 U.S.C. § 1331."); *contra, Chamberlain Livestock v. Aberdeen Production Credit Ass'n,* 22 B.R. 750, 752 (D.C.D.S.D.1982). ("A proceeding arising under Title 11 is a case involving a Federal question.")

matter jurisdiction of those actions contradicts the Bankruptcy Reform Act of 1978.[38]

In the Bankruptcy Reform Act of 1978, Congress clearly intended to vest, for all practical purposes, all subject matter jurisdiction of actions arising under the bankruptcy laws in the bankruptcy courts. Section 1471(b) of title 28, U.S.C., enacted by Section 241(a) of the Reform Act, conferred on the district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11." But this grant of jurisdiction to the district courts, as the Supreme Court recognized in *Marathon*, was a "facade." 102 S.Ct. at 2879. In fact, subject matter jurisdiction was vested in the bankruptcy courts, who, under Section 1471(c), "*shall* exercise *all* of the jurisdiction conferred by this section on the district courts." (emphasis supplied).

The legislative history of Section 1471 shows not only that it was to be the sole grant of subject matter jurisdiction of actions arising under title 11, but also that it was to be so broad that any grant of jurisdiction made by Section 1331 would be superfluous.

Congress intended Section 1471 to be the sole grant of subject matter jurisdiction of proceedings arising under title 11. The Supreme Court in *Marathon* found that "as part of a comprehensive restructuring of the bankruptcy laws, Congress has vested jurisdiction over this and all matters related

to cases under title 11 *in a single non-Art. III court,* and has done so pursuant to a *single statutory grant of jurisdiction* ... [O]ne express purpose of the Act was to ensure adjudication of all claims in a single forum and to avoid the delay and expense of jurisdictional disputes." (emphasis supplied). *Marathon, supra,* 102 S.Ct. at 2880 n. 40. (citing H.R.Rep. No. 95–595, *supra* at 43–48; S.Rep. No. 95–989, 95th Cong., 2d Sess. 17 (1978)).

House Resolution 8200, 95th Cong., 1st Sess. (Sept. 8, 1977), would have vested subject matter jurisdiction of "all civil proceedings arising under title 11 or arising under or related to cases under title 11" directly in the bankruptcy courts. This provision was intended to supplant the existing jurisdictional regime:

H.R. 8200 grants *the bankruptcy courts broad and complete jurisdiction* over all matters and proceedings that arise in connection with bankruptcy cases .... *All* matters arising under title 11, or arising under or related to cases under title 11 *will be within the jurisdiction of the bankruptcy court,* including proceedings to which the trustee is a party, proceedings to which the debtor is a party if the outcome of the proceeding will have an impact on the case (such as determination of exemptions, determination of dischargeability of debts, liquidation of non-dischargeable debts, *and determination of any right granted under title 11*), and all

**38.** At least two federal courts, ruling before the Bankruptcy Reform Act came into being, relied on Section 1331 in finding subject matter jurisdiction of actions brought against colleges by former students who had received discharges in bankruptcy alleging post-bankruptcy discrimination by means of withholding transcripts of credits for failure to repay student loans. *Girardier v. Webster College,* 563 F.2d 1267 (8th Cir.1977); *Handsome v. Rutgers University,* 445 F.Supp. 1362 (D.N.J.1978). These courts found that a federal question was raised because the bankrupts asserted violations of rights granted by federal bankruptcy law. *Girardier* and *Handsome* are distinguishable from this action because neither was an action by a trustee in bankruptcy asserting the avoiding powers provisions of the bankruptcy statute. In any event, as will be shown in the text, Congress intended that after the enactment of

the Bankruptcy Reform Act, actions such as these be tried in the bankruptcy courts, not in the district courts. Section 525 of the Reform Act prohibits governmental units such as state colleges from discriminating against persons solely for failure to repay a dischargeable debt. Congress designed 28 U.S.C. § 1471 to include actions brought to enforce the rights granted by Section 525: "Very often, issues will arise after a case is closed, such as ... the existence of prohibited post-bankruptcy discrimination, proposed 11 U.S.C. 525 ...: The bankruptcy courts will be able to hear these proceedings because they arise under title 11." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 445 (1977), U.S.Code Cong. & Admin.News 1978, p. 6401 (explanation of Section 1471). Thus, even if *Girardier* and *Handsome* correctly interpreted Section 1331, they have been legislatively overruled by the Bankruptcy Reform Act.

proceedings involving the administration of the case. The forum shopping and jurisdictional litigation that have plagued the bankruptcy system, the unfairness to defendants from "jurisdiction by ambush," and the dissipation of assets and the expense associated with bifurcated jurisdiction will be eliminated by the jurisdiction proposed by this bill.

H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 48 (1977), U.S.Code Cong. & Admin.News 1978, p. 6010. (emphasis supplied). Section 1471 would be

> the broadest grant of jurisdiction to dispose of proceedings that arise in bankruptcy cases or under the bankruptcy code. *Actions that formerly had to be tried* in State court or *in Federal district court, at great cost and delay to the estate, may now be tried in the bankruptcy courts.*
>
> .    .    .    .    .
>
> The phrase "arising under" has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11 . . . Any action by the trustee under an avoiding power would be a proceeding arising under title 11, because the trustee would be claiming based on a right given by one of the sections in subchapter III of chapter 5 of title 11.

*Id.* at 445, U.S.Code Cong. & Admin.News 1978, p. 6400. (emphasis supplied). Thus, actions like this one to avoid transfers under Sections 548 and 544(b) were to be governed solely by the jurisdictional grant of Section 1471, and, furthermore, were to be tried only in the bankruptcy courts.[39]

The Senate's proposal, S. 2266 95th Cong., 2d Sess. (May 17, 1978), would have conferred subject matter jurisdiction of "all civil proceedings arising under title 11 or arising under or related to cases under title 11" on the district courts, but then would have required the bankruptcy judges to exercise "all powers and jurisdiction conferred on the district court." Section 216 of S. 2266, proposed 28 U.S.C. § 1334. While the Senate differed with the House on the appropriate structure of the bankruptcy court system, it was in full agreement that the grant of subject matter jurisdiction over bankruptcy matters should be complete and that bankruptcy jurisdiction at the trial level should be exercised exclusively by the bankruptcy courts, not the district courts:

> It is the purpose [of the Senate's proposed jurisdictional provisions] to eliminate entirely the present jurisdictional dichotomy between summary and plenary jurisdiction. Therefore, except where the bankruptcy court abstains from hearing an action or proceeding arising under or related to a case under title 11, all cases under title 11 and *all* civil actions and proceedings arising under or related to cases under title 11 *are to be before the bankruptcy judge.*
>
> Jurisdiction in bankruptcy cases and in civil actions and proceedings arising under or related to bankruptcy cases is vested directly in the district courts . . . [The Senate's proposed jurisdictional provisions], while conferring expanded jurisdiction in bankruptcy cases and related civil actions and proceedings directly upon the district courts, *delegate the exclusive exercise of that jurisdiction at the trial level to bankruptcy judges* [except as provided in proposed § 1334(d)(2), which prohibited a bankruptcy judge from enjoining another court or punishing contempts by imprisonment or by a fine of more than $1,000.]

S.Rep. No. 95–989, 95th Cong., 2d Sess. 18 (1978), U.S.Code Cong. & Admin.News 1978,

---

**39.** The statement in the House Report that "the phrase 'arising under' has a well defined and broad meaning in the jurisdictional context" is significant. One of the most prominent appearances of the phrase "arising under" in the law of federal jurisdiction is in 28 U.S.C. § 1331. It is highly unlikely that Congress would grant to the bankruptcy courts jurisdiction of "proceedings arising under title 11" but at the same time harbor a secret intention to permit the phrase "arising under" in Section 1331 to be invoked in the district courts in proceedings arising under title 11.

p. 5804 (emphasis supplied). The Senate intended that "the totality of this jurisdiction [except for punishment of contempts by imprisonment or by a fine of more than $1,000, enjoining other courts, and acting in municipal adjustment and railroad reorganization cases] ... shall be exercised by the bankruptcy court." *Id.* at 153, U.S.Code Cong. & Admin.News 1978, p. 5939. The district courts, with the exceptions just noted, were to function only in an appellate capacity. *Id.* at 153–154.

Present Section 1471 is a compromise of the positions taken in the House and in the Senate on court structure. At the same time, however, it embodies the clearly expressed intention of both houses of Congress to supply subject matter jurisdiction over bankruptcy matters in a single statute and to ensure that all such jurisdiction would be exercised only by the bankruptcy courts.[40] Moreover, it reflects Congress' decision that the grant of subject matter jurisdiction over bankruptcy matters be as broad as possible. Thus, the continued existence of Section 1331 as a grant of subject matter jurisdiction over bankruptcy matters is inconsistent with the Bankruptcy Reform Act, not only because it would split the grant of subject matter jurisdiction between two statutes and permit parties to invoke bankruptcy trial jurisdiction in the district courts, but also because it is superfluous. With respect to bankruptcy matters, Section 1331 grants no jurisdiction not granted by Section 1471.[41]

Construing Section 1331 to grant jurisdiction of actions arising under Title 11 would conflict not only with Section 1471, but also with the transition provisions of the Bankruptcy Reform Act of 1978. During the transition period between October 1, 1979

and April 1, 1984, "all cases commenced under title 11 ... *shall be* referred to the United States bankruptcy judges" and "all proceedings in such cases *shall be* before the United States bankruptcy judges [except proceedings to enjoin courts, certain contempt proceedings, and appeals]." Pub.L. No. 95–598, 405(a)(1), 92 Stat. 2685. Permitting proceedings arising under title 11 to be before the United States district courts under 28 U.S.C. § 1331 is inconsistent with this statute.

Moreover, Section 405(b), Pub.L. No. 95–598, 92 Stat. 2685, placed under the heading "Jurisdiction and Procedure During Transition," identifies the source of subject matter jurisdiction of bankruptcy matters during transition.

> During the transition period, the amendments made by sections 241 [which includes the enactment of Section 1471] ... shall apply to the courts of bankruptcy continued by Section 404(a) of this Act the same as such amendments apply to the United States bankruptcy courts established under section 201 of this Act.

Only Section 1471 was identified. Section 1331 was ignored.

Finally, jurisdiction of bankruptcy civil proceedings under Section 1331 produces irreconcilable conflict between the venue and removal provisions pertaining to district courts and the venue and removal provisions of the Bankruptcy Reform Act of 1978.

28 U.S.C. §§ 1472–1477 and 1478 codify the venue and removal provisions of Section 241(a) of the Bankruptcy Reform Act. *Marathon,* as noted above, invalidates all of Section 241(a), including the venue and removal statutes. Thus, the district court, if

40. *Accord, Benchic v. Century Entertainment Corp. (In re Century Entertainment Corp.)* 20 B.R. 126, 128 (Bkrtcy.S.D.Ohio 1982) ("The District Court's jurisdiction under title 11, however, should not be exercised by the District Court as a trial court. Instead, Congress has mandated that the Bankruptcy Court, as 'adjunct,' 'shall exercise all of the jurisdiction conferred by this section ...' in a scheme which contemplates the independent exercise of the District Court's bankruptcy jurisdiction by the

Bankruptcy Court, subject to appellate review by the District Courts or the United States Courts of Appeals. 28 U.S.C. §§ 1334 and 1471(c). The use of the word, 'adjunct,' was not intended to imply ... the existence of a dual forum option.").

41. *Accord, In re Conley, supra* note 37, 26 B.R. at 897: "[A] specific grant of power, such as that contained in § 1471, prevails over the broader language of § 1331."

it assumes jurisdiction of bankruptcy cases and proceedings pursuant to 28 U.S.C. § 1331 or some other provision outside Section 241(a), must look to 28 U.S.C. §§ 1391–1407 and 1441, which govern venue and removal in the district courts. These venue and removal rules are so different from those enacted by Section 241(a) of the Bankruptcy Reform Act, however, that their use in bankruptcy cases and proceedings would run afoul of Congress' intent to provide distinct venue and removal rules in bankruptcy.[42]

In summary, even if under former law Section 1331 granted jurisdiction of bankruptcy civil proceedings, the continued existence of that jurisdiction is inconsistent with the Bankruptcy Reform Act of 1978.

## CONCLUSION

Recognizing that hardship and disruption may result from a decision denying the jurisdiction of district and bankruptcy courts over this and similar actions, the court has carefully sought a valid basis for subject matter jurisdiction. Having searched and finding no jurisdiction, it is the court's duty to dismiss the trustee's complaint.

Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause ... [J]udicial duty is not less fitly performed by declining ungranted jurisdiction than in exercising firmly that which the Constitution and the laws confer.

*Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514–515, 19 L.Ed. 264 (1869).

The exercise of jurisdiction when none exists would violate my oath of office and do catastrophic and irreparable harm to those who act in reliance upon the court's orders and judgments. The court certifies that the circumstances require immediate review.

*Marathon*'s invalidation of Section 241(a) and the absence of curative legislation have closed the doors of the federal courts to civil proceedings arising under bankruptcy law. For the present, at least for this action and others like it, no legitimate source of jurisdiction appears. An order consistent with this opinion was entered which will be stayed by this court pending appeal.

**42.** Sections 1391–1407 of title 28 contain the venue rules for the district courts. These rules are for "civil actions." No provision is made for bankruptcy cases. If the district courts asserted jurisdiction over bankruptcy cases, they would be left without venue rules. Equally difficult problems would result in bankruptcy civil proceedings. The venue of civil proceedings was covered by 28 U.S.C. §§ 1473, 1475, and 1477, now invalidated by *Marathon*. These provisions are different from the venue rules applicable in the district courts. For example, Section 1473(a) provides that proceedings arising in or related to a case under title 11, with two exceptions found in 1473(b) and (d), may be commenced in the bankruptcy court in which the title 11 case is pending. Section 1391, on the other hand, generally places venue in the district where all plaintiffs or all defendants reside or in which the claim arose in diversity actions, and in the district where all defendants reside or in which the claim arose in non-diversity actions. Section 1475 permits a change of venue "to a bankruptcy court for another district, in the interest of justice and for the convenience of the parties." But Section 1404(a) permits a change of venue "to any other district or division where it might have been brought," and only "for the convenience of parties and witnesses."

Removal to the bankruptcy courts was governed by 28 U.S.C. § 1478, now invalidated by *Marathon*. Removal to the district courts is governed by 28 U.S.C. § 1441. While Section 1478 permits "a party" to remove, only "the defendant or the defendants" may remove under Section 1441. While Section 1478 permits removal of "any claim or cause of action in a civil action," Section 1441 provides only for removal of a "civil action." Although under Section 1478 a claim or cause of action may be removed from any court, state or federal, except the United States Tax Court, under Section 1441 a civil action may be removed only from state courts. Under Section 1478, removal is to "the bankruptcy court for the district where such civil action is pending," but under Section 1441 removal is to "the district court of the United States for the district and division embracing the place where such action is pending." Finally, while removal can occur under Section 1478 "if the bankruptcy courts have jurisdiction over [the] claim or cause of action," removal can occur under Section 1441 only if "the district courts of the United States have original jurisdiction."